No. 04-4088
File Name: 05a0883n.06
Filed: November 4, 2005

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| OLGA SKIRKO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW OF |
| | ) | AN ORDER OF THE BOARD OF |
| ALBERTO GONZALES, Attorney General, | ) | IMMIGRATION APPEALS |
| | ) | |
| Respondent. | ) | |

Before:     **NELSON** and **GILMAN**, Circuit Judges, and **DONALD**, District Judge.[*]

**DAVID A. NELSON**, Circuit Judge.  This case is here on a petition for review of a

Board of Immigration Appeals order denying an application for asylum.  The main question

is whether the record compels a finding that the petitioner was persecuted in Ukraine, or has

a well-founded fear of persecution there, because of her political beliefs.  In our view a

reasonable trier of fact could find (1) that the mistreatment suffered by the petitioner does

not amount to political persecution, and (2) that the petitioner's fear of persecution is not

objectively reasonable.

In addition to her substantive challenge to the denial of asylum, the petitioner

challenges the alleged misuse of a "streamlined" single-member review procedure by the

---

[*]The Honorable Bernice Bouie Donald, United States District Judge for the Western
District of Tennessee, sitting by designation.

Board of Immigration Appeals. Assuming that this court has jurisdiction to review the Board's decision to use the procedure in question, we conclude that the petitioner's challenge fails because the decision was not arbitrary and capricious. The petition for review will be denied.

I

The petitioner, Olga Skirko, is a native-born citizen of Ukraine. Ms. Skirko attempted to enter the United States in March of 2001 without valid entry documents. The Immigration and Naturalization Service initiated removal proceedings against her, and Ms. Skirko conceded removability.

In March of 2002 Ms. Skirko applied for asylum and withholding of removal. She claimed that she and her husband were members of the Democratic Union political party, that she had been injured in two fights between communists and democrats, that her husband had been beaten by communists, and that communists had made threatening telephone calls to her home. Ms. Skirko expressed a belief that she would be injured or killed by communists if she were to return to Ukraine.

At a hearing before an immigration judge, or "IJ," Ms. Skirko testified that she had been politically active since 1997 and a member of the Democratic Union party since 1999. She said that she had experienced several problems because of her political activity.

On August 23, 1999, Ms. Skirko testified, a fight broke out between groups of communists and democrats assembled at a public square. Ms. Skirko was hit several times and pushed to the ground. She received first aid at a hospital for injuries to her side and arm. Ms. Skirko reported the incident to the police, but they did not "accept [her] complaint." The police advised Skirko "not to attend those meetings."

On November 7, 1999, Ms. Skirko suffered a concussion in another altercation between communists and democrats. She was again treated at a hospital. Ms. Skirko returned to the police, but the officer with whom she spoke did not even read her complaint. Again, Skirko was advised not to attend "those meetings."

Between August and November of 1999 a neighbor told Ms. Skirko to "get away from here" and that her "place is in [a] concentration camp." The neighbor said "please don't be involved in something you're not supposed to be involved," leading Ms. Skirko to believe that the neighbor's comments were based on Ms. Skirko's political views. Similar comments were made to Ms. Skirko by different persons about once every two weeks.

On January 25, 2000, Ms. Skirko was pushed and insulted by communists at another political demonstration. She was not physically harmed on this occasion.

Ms. Skirko and her husband received threatening telephone calls in December of 2000. The calls were reported to the police, but no action was taken. Later that month Ms. Skirko's husband was beaten outside their apartment complex and told to "go away from here, get out from this place." Again, the police did nothing.

The next month Ms. Skirko said she and her husband decided to leave Ukraine. Her husband left the country in February of 2001, and she followed him in March.

After hearing the evidence, the IJ denied Ms. Skirko's claims for asylum and other relief. The IJ credited Ms. Skirko's testimony, which he found to be corroborated in part by documentary evidence. He concluded, however, that Ms. Skirko had not made a sufficient showing that the incidents about which she testified constituted persecution by the government or by persons the government was unwilling or unable to control. Having reached that conclusion, the judge held that Ms. Skirko had failed to demonstrate a well-founded fear of persecution.

Ms. Skirko appealed to the Board, which, acting through a single member, affirmed without opinion. She then filed a timely petition for review.

II

To establish eligibility for asylum, an alien must show that she is a "refugee" – *i.e.*, a person who is unable or unwilling to return to her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1158(b)(1), 1101(a)(42)(A); see 8 C.F.R. § 208.13(b); *Koliada v. INS*, 259 F.3d 482, 486-87 (6th Cir. 2001). An administrative determination as to whether an alien is a refugee is "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. §

1252(b)(4)(B); *Singh v. Ashcroft*, 398 F.3d 396, 400-01 (6th Cir. 2005). The question we must answer, therefore, is whether a reasonable fact-finder would have to conclude that Ms. Skirko was persecuted in Ukraine, or has a well-founded fear of persecution there, because of her political beliefs.

"[P]ersecution is an extreme concept that does not include every sort of treatment our society regards as offensive." *Ali v. Ashcroft*, 366 F.3d 407, 410 (6th Cir. 2004) (internal quotation marks omitted). Persecution "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998). Moreover, "indiscriminate abuse, such as physical force or violence employed against a crowd of demonstrators," see *Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005), and "civil unrest between competing political factions," see *Ali*, 366 F.3d at 410, do not constitute persecution. Finally, "[f]inding persecution ordinarily requires a determination that government authorities, if they did not actually perpetrate or incite the persecution, condoned it or at least demonstrated a complete helplessness to protect the victim." *Meghani v. INS*, 236 F.3d 843, 847 (7th Cir. 2001).

In the case at bar we are not persuaded that a reasonable adjudicator would be compelled to find that Ms. Skirko suffered political persecution. First, Ms. Skirko did not testify that the offensive comments directed at her by a neighbor and others were accompanied by threatened or actual violence. These comments can fairly be described, we

believe, as harassment rather than persecution. And there is no evidence that the Ukrainian government incited or condoned the harassment.

Second, Ms. Skirko was not harmed in the January 25, 2000, incident, and again there is no evidence that the government had any involvement in it. Ms. Skirko did not testify that she reported this incident to the police.

Third, the incidents of August 24 and November 7, 1999, can be viewed as the products of "civil unrest between competing political factions" rather than political persecution of Ms. Skirko. See *Ali*, 366 F.3d at 410. Moreover, there is evidence that the police made a record of Ms. Skirko's complaints about these incidents and decided, on the basis of Ukrainian criminal law, not to investigate. We do not think the record compels a finding that the police declined to investigate because they were unwilling or unable to protect Ms. Skirko.

Fourth, Ms. Skirko testified that she did not know who made the threatening telephone calls to her home in December of 2000. Nothing in the record compels a conclusion that the calls were made because of Ms. Skirko's political beliefs or that the government had any complicity in the calls.

Fifth, Ms. Skirko did not testify as to who had beaten her husband, or why. It can reasonably be inferred, perhaps, that communists beat Mr. Skirko because of his political beliefs, but the inference is not a necessary one. In sum, the totality of Ms. Skirko's testimony does not compel a finding that she was persecuted on account of political opinion.

Nor does the record compel a finding that Ms. Skirko has a well-founded fear of future political persecution. Absent a compelling demonstration of past persecution, the IJ was not required to presume that Ms. Skirko has a well-founded fear of persecution in the future. See 8 C.F.R. § 208.13(b)(1) (past persecution raises a rebuttable presumption that the alien has a well-founded fear of future persecution). And although Ms. Skirko presented uncontested evidence of her subjective fear, she did not make a compelling showing that her fear was objectively reasonable.

Ms. Skirko points to evidence of anti-democratic conditions in Ukraine, such as limitations on the freedom of the press and police beatings of anti-government demonstrators. But she has identified no evidence of a pattern of persecution targeted at members of the Democratic Union or other democratic political parties. Given the general nature of Ms. Skirko's evidence, we do not think the IJ was required to find that there is a "reasonable possibility" Ms. Skirko will be persecuted if she returns to Ukraine. See 8 C.F.R. § 208.13(b)(2).[1]

---

[1]Ms. Skirko has submitted extra-record evidence relating to Ukraine's 2004 presidential election and the poisoning of candidate — now president — Victor Yushchenko. The government contends that such evidence may not be considered by the court. Even if the evidence may be considered, however, it has little probative value. Nothing in the news articles submitted by Ms. Skirko suggests that rank-and-file democrats are persecuted in Ukraine.

III

Ms. Skirko finally argues that the Board violated its regulations by affirming the IJ's decision without issuing a detailed opinion. This court has not yet decided whether a determination by the Board to use its affirmance-without-opinion procedure is subject to judicial review. See *Hassan v. Gonzales*, 403 F.3d 429, 437-38 (6th Cir. 2005). Instead, we have assumed that judicial review is available under the Administrative Procedure Act and have indicated that if this assumption is correct, the Act's "arbitrary and capricious" standard would apply. See *id.* (applying 5 U.S.C. § 706(2)(A)).

Under 8 C.F.R. § 1003.1(e)(4), a single Board member may affirm an IJ's decision without opinion if the Board member determines that the result is correct, that any errors are harmless or immaterial, and that (a) the issues on appeal are controlled by precedent or (b) the issues are not so substantial that the case warrants a written opinion. In the case at bar Ms. Skirko contends that the result reached by the IJ is incorrect and that her challenge to the IJ's factual findings is not insubstantial. We are not persuaded that the Board's contrary determination was arbitrary and capricious.

For the reasons set forth above, we think that the IJ's findings as to Ms. Skirko's eligibility for asylum are supported by substantial evidence. That being the case, the Board acted reasonably in determining that the IJ reached the correct result, see *Hassan*, 403 F.3d at 438, and in determining that Skirko's challenge to the IJ's factual findings was insubstantial. (In this connection, we note that the Board reviews an IJ's factual findings

only for clear error.  See 8 C.F.R. § 1003.1(d)(3)(i).)  We see nothing arbitrary or capricious

about the use of the affirmance-without-opinion procedure in this instance.

The petition for review is **DENIED**.