**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
April 4, 2011

Lyle W. Cayce
Clerk

No. 09-60862

CIRILO RAMOS-TORRES, also known as Cirilo Ramos,
also known as Cirilo R. Torres,

Petitioner

v.

ERIC H. HOLDER, JR., U.S. Attorney General,

Respondent

Petition for Review of an Order
of the Board of Immigration Appeals

Before DAVIS, WIENER, and BENAVIDES, Circuit Judges.

WIENER, Circuit Judge:

Petitioner Cirilo Ramos-Torres, a Mexican citizen, was convicted in 1982 for illegal entry into the United States. He was sentenced to three years of unsupervised probation that was conditioned on his making no illegal return to the United States. Ramos-Torres requested an administrative voluntary departure in lieu of deportation, which was granted, and he returned to Mexico. At some point during the next decade, Ramos-Torres did illegally reenter the United States, and, in 1993, he became a lawful permanent resident (LPR). In 2006, Ramos-Torres was convicted for illegally transporting aliens and was ordered removed from the United States. Ramos-Torres applied for cancellation

No. 09-60862

of removal as an LPR, but the Immigration Judge (IJ) determined as a matter of law that he had never been eligible for LPR status because of his 1982 voluntary departure, and thus he was ineligible for cancellation of removal. The BIA affirmed the IJ's decision. We agree and deny Ramos-Torres's petition for review.

## I.  FACTS & PROCEEDINGS

### A.  Facts

In 1980, Ramos-Torres, a Mexican citizen, illegally entered and began residing in the United States. In March 1982, the former Immigration and Naturalization Service (INS) apprehended Ramos-Torres while he was illegally transporting aliens. Ramos-Torres pleaded guilty only to the offense of unlawfully entering the United States and was convicted on that count. He was subsequently sentenced to three years of unsupervised probation conditioned on his "making no illegal return to the United States." As noted, Ramos-Torres applied for an administrative voluntary departure in lieu of deportation proceedings, which was granted, and he returned to Mexico.

Ramos-Torres did illegally return to the United States, however, allegedly right after he voluntarily departed in March 1982. In 1993, he applied for and was granted LPR status under the amnesty provision of the Immigration Reform and Control Act of 1986[1] (IRCA).

In 2006, the INS again apprehended Ramos-Torres for illegally transporting aliens. He pleaded guilty and was convicted of that offense for which he was sentenced to one year of unsupervised probation. Based on that conviction, however, the INS took him into custody for violation of his immigration status, pending removal proceedings. At those proceedings, the IJ sustained the charge of removability.

---

[1] Pub. L. No. 99-603, § 201, 100 Stat. 3359, codified at 8 U.S.C. § 1255a.

No. 09-60862

## B. Proceedings

In a separate proceeding, Ramos-Torres sought LPR cancellation of removal under § 240A(a) of the Immigration and Nationality Act[2] (INA). In his original application, he stated that he first entered the United States in 1993 as an LPR, but he later amended the application to admit that he had first entered the United States in 1982 and had done so illegally.

At the cancellation-of-removal hearing, the IJ had Ramos-Torres confirm that he was admitting that he had returned to Mexico under an administrative voluntary departure order following his illegal entry conviction in 1982. Based on this admission, the IJ determined that Ramos-Torres could never have lawfully obtained temporary resident status—which requires continuous residence in the United States since January 1, 1982—because his voluntary departure later that year broke the requisite period of continued residence. And, if Ramos-Torres could not have legally adjusted his status to that of a temporary resident, he could not have lawfully adjusted his status to that of an LPR. Based on this determination, the IJ concluded that Ramos-Torres was ineligible for cancellation of removal as a matter of law under the INA and ordered Ramos-Torres removed to Mexico.

Ramos-Torres appealed the IJ's judgment to the BIA, which conducted a de novo review and affirmed the IJ's order. Ramos-Torres timely petitioned for review of the BIA's order.

## II.  ANALYSIS

### A.  Standard of Review

We have jurisdiction to review final orders of removal only to the extent that they raise "constitutional claims or questions of law."[3] In reviewing the

---

[2] 8 U.S.C. § 1229b.

[3] *Id.* § 1252(a)(2)(D).

3

No. 09-60862

BIA's decision, we review de novo questions of law and the BIA's interpretation and application of Supreme Court and Fifth Circuit precedent.[4] We do accord deference to the BIA's interpretation of immigration statutes, however, "unless it is plainly erroneous or inconsistent with the regulation."[5]

## B. Ramos-Torres's Voluntary Departure Was "Under Threat of Deportation"

When we review a final order of removal, "a constitutional claim or question of law may be reviewed only if 'the alien has exhausted all administrative remedies available to the alien as of right.' Failure to exhaust is a jurisdictional bar."[6] "Petitioners fail to exhaust their administrative remedies as to an issue if they do not first raise the issue before the BIA, either on direct appeal or in a motion to reopen."[7]

Ramos-Torres asserts on appeal that "[t]he conclusions of the IJ and the BIA that [he] departed '*under threat of deportation*' [are] not supported by the record." The government counters that we "lack[] jurisdiction to consider Ramos's argument that he did not accept voluntary departure under threat of being placed in deportation proceedings because Ramos did not exhaust this argument before the agency." Alternatively, the government contends that Ramos-Torres's argument is without merit in light of record evidence that supports the finding that his voluntary departure *was* under threat of deportation.

In Ramos-Torres's brief to the BIA, he only argued that a "voluntary

---

[4] *See Lopez De Jesus v. I.N.S.*, 312 F.3d 155, 158-89 (5th Cir. 2002).

[5] *Silwany-Rodriguez v. I.N.S.*, 975 F.2d 1157, 1160 (5th Cir. 1992) ("[Our de novo review] is limited, and the court accords deference to the Board's interpretation of immigration statutes unless there are compelling indications that the Board's interpretation is wrong.") (internal quotation marks and citation omitted).

[6] *Claudio v. Holder*, 601 F.3d 316, 317 (5th Cir. 2010) (quoting 8 U.S.C. § 1252(d)(1)).

[7] *Omari v. Holder*, 562 F.3d 314, 318 (5th Cir. 2009).

4

No. 09-60862

departure" is distinct from a "departure under an order of deportation." At no time did he contest the IJ's conclusion that he "was voluntarily returned to Mexico in lieu of deportation." The BIA, in turn, determined that "[t]he findings of fact which are fully set forth in the Immigration Judge's decision are not clearly erroneous. The issue before us involves the respondent's 1982 voluntary return to Mexico under a threat of deportation . . . ."

To the extent that the question whether Ramos-Torres's voluntary departure was "in lieu of deportation" requires a factual determination that was made by the IJ and confirmed by the BIA, we have no jurisdiction to review it.[8] To the extent that this question presents an issue of law, Ramos-Torres did indeed fail to exhaust his administrative remedies by not first raising it before the BIA. We therefore have no jurisdiction to review it and must accept that Ramos-Torres voluntarily departed the United States in 1982 under threat of deportation.

## C.  A "Voluntary Departure Under Threat of Deportation" Establishes a Break in Continuous Residence

As the BIA explained in its order, "[a]n alien seeking cancellation of removal has the burden of proof to establish that he is eligible for the relief sought." If, as a matter of law, Ramos-Torres was not eligible to receive LPR status in 1993, then he could not, and therefore did not, *lawfully* acquire it; absent which he is not eligible for cancellation of removal.[9] The key issue before us, therefore, is whether Ramos-Torres's 1982 voluntary return to Mexico under a threat of deportation (which the BIA refers to as an "administrative voluntary

[8] Furthermore, Ramos-Torres acknowledged in his appeal brief to the BIA that "[t]he IJ"s written decision, issued March 23, 2009, correctly and accurately summarizes the facts . . . ."

[9] The Attorney General may terminate resident status "if it appears to the Attorney General that the alien was in fact not eligible for such status." 8 U.S.C. § 1255a(b)(2)(A).

No. 09-60862

departure") interrupted his continuous residence in the United States such that he has never been eligible for LPR status.

Ramos-Torres putatively obtained LPR status under the amnesty provision of the IRCA, which requires that the alien applicant "establish that he entered the United States before January 1, 1982, and that he has *resided continuously* in the United States in an unlawful status since such date and through the date the application is filed under this subsection."[10] The IRCA further states:

> [A]n alien shall not be considered to have resided continuously in the United States, if, during any period for which continuous residence is required, the alien was outside the United States as a result of *a departure under an order of deportation* . . . .[11]

The Attorney General "may provide for a waiver, in the discretion of the Attorney General, of the periods [of continuous residence] in the case of an absence from the United States due merely to a brief temporary trip abroad required by *emergency* or *extenuating circumstances* outside the control of the alien."[12]

Ramos-Torres's primary argument both to the BIA and in his petition here is that, for purposes of the IRCA, his "voluntary departure under the threat of deportation" is not the same thing as "a departure under an order of deportation." Notwithstanding the fact that both are "departures," argues Ramos-Torres, "Congress knew the difference between voluntary departure and deportation," so a voluntary departure should not break continuous residence the way that deportation does under the statute.

---

[10] *Id.* § 1255a(a)(2)(A) (emphasis added).

[11] *Id.* § 1255a(g)(2)(B)(i) (emphasis added).

[12] *Id.* § 1255a(g)(2)(C) (emphases added).

No. 09-60862

Both the BIA and the government rely on our analysis in *Mireles-Valdez v. Ashcroft*.[13] There, we held that an administrative voluntary departure, like that of Ramos-Torres, interrupts *continuous presence* for purposes of a related INA provision.[14] We pointed to the "obvious and compelling fact" that "voluntary departure, with its attendant understanding that the alien will cease his illegal presence, is not consistent with continuous presence."[15] We did not understand a voluntary departure to be different by nature "whether offered at the end of the immigration proceedings or earlier at the border . . . . When the Attorney General grants voluntary departure, the alien cannot later claim that he did so while continuing his continuous presence for use in a future adjudication for discretionary relief."[16] We also considered a regulation that the Attorney General had issued in the context of the Nicaraguan Adjustment and Central American Relief Act, which stated outright that "'a period of continuing physical presence is terminated whenever . . . the alien has voluntarily departed under threat of deportation.'"[17]

Although not mentioned by either party, *Mireles-Valdez* is distinguishable because that case addressed continuous *presence*, whereas the controlling statute here requires continuous *residence*.[18] The Supreme Court has said in the past, in the context of a statute being amended to replace "continuous residence" with

---

[13] 349 F.3d 213 (5th Cir. 2003).

[14] *Id.* at 214.

[15] *Id.* at 218.

[16] *Id.*

[17] *Id.* (quoting 8 C.F.R. § 240.64(b)(3)).

[18] The IJ seemingly confused the requirements of the statute as well. The statute requires continuous residence since January 1, 1982 and continuous physical presence since November 6, 1986. *See* 8 U.S.C. § 1255a(a)(2), (3). Seemingly, Ramos-Torres's continued physical presence is not at issue in this case.

No. 09-60862

"continuous presence": "Had Congress been concerned only with 'non-intermittent' presence or with the mere maintenance of a domicile or general abode, it could have retained the 'continuous residence' requirement. Instead, Congress expressly opted for the seven year 'continuous physical presence' requirement."[19] The requirement of maintaining continuous residence, therefore, although not as strict as the requirement of continuous physical presence discussed in *Mireles-Valdez*, is nevertheless based on the same principles.

For example, it is no stretch to argue, along the lines of *Mireles-Valdez*, that *voluntary departure*, with its attendant understanding that the alien will thereby cease his illegal presence, is equally inconsistent with *continuous residence*. As the Supreme Court has held, "The obvious purpose of deportation is to terminate residence."[20] Consequently, a voluntary departure *in lieu of deportation* has the same purpose of terminating residence, which is still inconsistent with fulfilling a continuous residence requirement.

Ramos-Torres directs us to the Ninth Circuit cases of *Pedroza-Padilla v. Gonzalez*[21] and *Espinoza-Gutierrez v. Smith*[22] to support his proffered distinction between voluntary departure under *threat* of deportation and a departure under *order* of deportation. If anything, however, both cases cut against his argument. In *Pedroza-Padilla*, the alien was "ordered deported from the United States in 1984, [and] was given until January 5, 1985 to depart voluntarily, but failed to depart until March 27, 1985."[23] Agreeing with the Administrative Appeals Office,

---

[19] *I.N.S. v. Phinpathya*, 464 U.S. 183, 191 (1984).

[20] *Mrvica v. Esperdy*, 376 U.S. 560, 568 (1964).

[21] 486 F.3d 1362 (9th Cir. 2007).

[22] 94 F.3d 1270 (9th Cir. 1996).

[23] 486 F.3d at 1363.

8

the Ninth Circuit held that the alien's March 1985 voluntary departure rendered him "ineligible for legalization because he had not resided continuously in the United States since at least January 1, 1982."[24]

In *Espinoza-Gutierrez*, the alien had departed, without receiving advance permission from the INS, for a four-day trip to his hometown in Mexico to check on some property for his parents while his application for LPR status was pending.[25] The Ninth Circuit examined whether this trip interrupted the LPR requirement that he have been *physically present* in the United States since November 6, 1986.[26] Consequently, the analysis in *Espinoza-Gutierrez* is distinct from ours today because that case involved both a different provision and a different type of departure.[27] As the Ninth Circuit clarified, "[H]e was not subject to a deportation hearing, nor is he subject to an order of deportation. He was the subject of an exclusion proceeding [upon reentering the United States after his four-day trip]."[28]

As a general matter, in fact, the Ninth Circuit has embraced reasoning contrary to that urged by Ramos-Torres, concluding that a voluntary departure does *not* differ from a deportation order vis-à-vis interruption of continued presence:

> An administrative "voluntary departure" under the statute is something that occurs with the permission of the Attorney General in lieu of removal proceedings. . . . While the statute provides some

---

[24] *Id.* at 1365.

[25] 94 F.3d at 1271-72.

[26] *Id.* at 1274. *See also* 8 U.S.C. § 1255a(a)(3).

[27] The Ninth Circuit accordingly remanded the case for the district court to determine whether the trip was "brief, casual, and innocent" in accordance with the standard for determining which absences interrupt continuous physical presence. *See Espinoza-Gutierrez*, 94 F.3d at 1279.

[28] *Id.* at 1278.

No. 09-60862

incentives to an alien to apply for voluntary departure and thus avoid removal proceedings and removal, nothing there suggests that an alien who commits to departure in order to avoid such proceedings is nevertheless entitled to continue accruing "presence" so as to become eligible for other discretionary relief.[29]

The decisions of the Ninth Circuit, therefore, do not lend support to Ramos-Torres's argument.

Ramos-Torres also asserts that "Congress intended the remedial provisions of 8 U.S.C. § 1255a, targeted exclusively and specifically at illegal aliens, to be generously construed in order to relieve applications of unintended consequences," and points to the waivers of absence provided for by the statute. But again, the waivers of absence are only provided in the Attorney General's discretion for "brief temporary trip[s] abroad required by emergency or extenuating circumstances."[30] In contrast, the record here confirms that (1) Ramos-Torres signed an order of voluntary departure, agreeing to return to Mexico, and (2) his criminal sentence suggested that he was not to reenter the United States for *three years*. His trip was not brief or temporary; neither was it required by an emergency or the type of extenuating circumstances excused by the Attorney General.

Such a departure is equally significant, under *threat* of deportation or under an *order* of deportation,[31] and either breaks an alien's continuous

---

[29] *Vasquez-Lopez v. Ashcroft*, 343 F.3d 961, 974 (9th Cir. 2003) (per curiam). The statute providing for voluntary departures prior to 1996 provided, in relevant part, that the "Attorney General may, in his discretion, permit any alien under deportation proceedings . . . to depart voluntarily from the United States at his own expense in lieu of deportation." 8 U.S.C. § 1254(e)(1) (1994).

[30] 8 U.S.C. § 1255a(g)(2)(C).

[31] According to the law at the time of Ramos-Torres's voluntary departure, we determined that such a departure under threat of deportation "significantly interrupt[ed]" an alien's presence in the United States and thus that such departure was "a significant departure from the United States." *Vargas-Gonzalez v. I.N.S.*, 647 F.2d 457, 458 (5th Cir. 1981); *Segura-Viachi v. I.N.S.*, 538 F.2d 91, 92 (5th Cir. 1976).

10

residence to the same extent. The inescapable fact is that Ramos-Torres left the United States for an unknown period of time after agreeing that he would not illegally return to the United States for at least three years. He did not briefly depart for reasons of emergency or extenuating circumstances; rather, he departed because he was convicted of a crime and sentenced to three years of probation, which required his departure from the United States. The LPR provision at issue here falls into a subsection of the INA entitled "Absences caused by deportation or advanced parole."[32] Ramos-Torres's absence was surely *caused* by the imminence of his deportation, even if deportation proceedings had not yet commenced against him. Consequently, his voluntary departure in lieu of deportation interrupted his alleged continuous residence as a matter of fact and as a matter of law.

In sum, there are no compelling indications that the BIA incorrectly concluded, as a matter of law, that Ramos-Torres was ineligible for LPR status based on his 1982 voluntary departure from the United States and that he is now ineligible for LPR cancellation of removal.

## CONCLUSION

For the foregoing reasons, Ramos-Torres's petition for review of the BIA's order is DENIED.

---

[32] 8 U.S.C. § 1255a(g)(2)(B).