RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0169p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

ANABELY GONZALEZ ORTIZ; AMIR GONZALEZ ORTIZ,
                                        *Petitioners*,

                    *v.*                                          No. 20-4248

MERRICK B. GARLAND, Attorney General,
                                        *Respondent*.

─────────────────

On Petition for Review from the Board of Immigration Appeals;
Nos. A 206-461-636; A 209-870-758.

Decided and Filed:  July 28, 2021

Before:  COLE, ROGERS, and MURPHY, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:**  Sarah C. Larcade, MCKINNEY & NAMEI CO., LPA, Cincinnati, Ohio, for Petitioners.  Rodolfo D. Saenz, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

─────────────────

## OPINION

─────────────────

MURPHY, Circuit Judge.  Refugees who fear "persecution" in their home countries may seek asylum in the United States.  *See* 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(A).  Although the immigration laws do not define the word "persecution," the Board of Immigration Appeals and the courts have interpreted this term to have a state-action element: A country's government must either directly inflict harm on an immigrant or be unable or unwilling to control a private party who inflicts the harm.  *See, e.g.*, *K. H. v. Barr*, 920 F.3d 470, 475 (6th Cir. 2019).

This case concerns this state-action element. Anabely Gonzalez Ortiz fled Guatemala to escape her ex-boyfriend's abuse. The Board denied Gonzalez Ortiz asylum, holding that she failed to show that the Guatemalan government was unable or unwilling to control her abuser. The Board relied in part on a State Department report noting that Guatemala had "taken steps" to curb domestic violence. Gonzalez Ortiz now argues that the Board wrongly refused to reconsider this ruling on the ground that it conflicts with our recent decision in *Juan Antonio v. Barr*, 959 F.3d 778 (6th Cir. 2020). There, although recognizing that Guatemala had "taken some steps" to combat domestic violence, we still overturned the Board's finding that the country was able to control an immigrant's abusive spouse. *Id.* at 795. Yet *Juan Antonio* relied on the totality of the evidence to reject the Board's finding, and our fact-specific rationales in that case do not transfer over to this one. While, for example, the police twice ignored the immigrant's request for assistance in *Juan Antonio*, Gonzalez Ortiz never asked the authorities for help in this case. Because Gonzalez Ortiz misreads *Juan Antonio*'s scope, we deny her petition for review.

I

Gonzalez Ortiz was born and raised in Guatemala. During her childhood and into her early-adult years, she suffered through significant domestic abuse. Starting when she was just five years old, her father would regularly come home drunk and hit her, her mother, and her siblings with a pot, a pan, or anything else lying around the house. He would also regularly threaten to harm or even kill them.

After Gonzalez Ortiz turned twenty, she met her boyfriend, Juan Carlos. A few months into this relationship, she testified, Juan Carlos raped her. She became pregnant. Gonzalez Ortiz was still living with her parents but feared that her pregnancy would aggravate her father's violence. With nowhere else to go, she decided to move in with Juan Carlos. Juan Carlos continued to assault Gonzalez Ortiz regularly during her pregnancy. One time, his abuse compelled her to visit a health clinic to ensure that he had not harmed her unborn child. Clinic records confirm this visit. Juan Carlos was also verbally abusive; he would often belittle Gonzalez Ortiz and threaten further violence.

A few months after Gonzalez Ortiz gave birth to a son, she discovered bruises on her newborn. She suspected that Juan Carlos had hit him. Worried that Juan Carlos would routinely abuse her baby, Gonzalez Ortiz chose to move back in with her parents. Her father had become gravely ill by then, so she no longer feared staying with him. Yet Gonzalez Ortiz continued to fear Juan Carlos, who had threatened to find and kill her if she left him. In October 2016, less than two months after Gonzalez Ortiz returned to her parents, she fled Guatemala altogether to escape Juan Carlos. She and her son arrived in the United States two months later.

The government initiated removal proceedings. Gonzalez Ortiz and her son conceded that they were removable but applied for asylum, withholding of removal, and relief under the Convention Against Torture. During the administrative proceedings, Gonzalez Ortiz and her son abandoned all but their asylum claims. In addition, the parties agree that the asylum claim of Gonzalez Ortiz's son depends on her own asylum claim, so we need not refer to his claim separately.

After a hearing, an immigration judge denied asylum to Gonzalez Ortiz. The Board of Immigration Appeals upheld the immigration judge's denial of relief. About a week after the Board issued its final order, we decided *Juan Antonio*. Gonzalez Ortiz then filed a motion for reconsideration with the Board, arguing that *Juan Antonio* changed the relevant asylum law. The Board denied this motion. Gonzalez Ortiz now petitions this court to review the Board's denial of her motion for reconsideration.

II

A

The asylum statute gives the Attorney General discretion to grant asylum to an immigrant who qualifies as a "refugee." *See* 8 U.S.C. § 1158(b)(1)(A). "Refugee" is defined to include:

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion[.]

*Id.* § 1101(a)(42)(A). This text requires asylum applicants to prove that they cannot or will not return to their home countries because of "persecution" or a "well-founded fear of persecution" that has arisen or will arise "on account of" certain protected traits. *Id.*; *see id.* § 1158(b)(1)(B)(i).

The immigration laws do not define a key word in the definition of refugee: "persecution." When Congress added the definition in 1980, many courts and the Board had already interpreted "persecution" in related contexts. *See Matter of Acosta*, 19 I. & N. Dec. 211, 219–23 (B.I.A. 1985); Refugee Act of 1980, Pub. L. No. 96-212, § 201(a), 94 Stat. 102, 102. The Board incorporated the "accepted construction" of this word into the refugee definition. *Acosta*, 19 I. & N. Dec. at 222. This preexisting construction required an immigrant to prove not just that the immigrant had suffered harm but also that the harm was sufficiently tied to a country's government. *See id.* So the Board held that alleged harm can qualify as "persecution" within the meaning of the refugee definition only if it is inflicted by the government or by private parties that the government is "unable or unwilling to control." *Id.* Since *Acosta*, we have frequently cited this test and required asylum applicants who fear private violence to prove that the government is unable or unwilling to control the private party. *See, e.g.*, *K. H.*, 920 F.3d at 475; *Velasquez-Rodriguez v. Whitaker*, 762 F. App'x 241, 244–45 (6th Cir. 2019) (per curiam); *Khalili v. Holder*, 557 F.3d 429, 436 (6th Cir. 2009); *Patel v. INS*, 22 F. App'x 478, 480 (6th Cir. 2001) (per curiam).

Gonzalez Ortiz alleged abuse from one such private party: Juan Carlos. To establish persecution, then, she needed to prove that the Guatemalan government was unable or unwilling to stop Juan Carlos's abuse. The Board gave two reasons why Gonzalez Ortiz had failed to make this showing. *Cf. K. H.*, 920 F.3d at 476–78. As a specific matter, Gonzalez Ortiz had never reported Juan Carlos's abuse to the authorities and had failed to adequately explain why she had not done so. *See* Admin. Rec. (A.R.) 148. As a general matter, a State Department report describing the conditions in Guatemala indicated that the government had "taken steps" to curb domestic violence in the country. *Id.*

We typically review the Board's ultimate finding that an immigrant failed to prove the government's inability or unwillingness to prevent private violence under the substantial-evidence test. *See Khalili*, 557 F.3d at 436; *see also Borodachev v. Holder*, 441 F. App'x 354, 360–61 (6th Cir. 2011); *Ralios Morente v. Holder*, 401 F. App'x 17, 24 (6th Cir. 2010); *El Ghorbi v. Mukasey*, 281 F. App'x 514, 517 (6th Cir. 2008). But we cannot review the Board's finding at all in this case. That is because Gonzalez Ortiz did not file a timely petition for review from the Board's final order denying her asylum claim. We thus lack jurisdiction over that order. *See Wajda v. Holder*, 727 F.3d 457, 461–62 (6th Cir. 2013) (citing *Stone v. INS*, 514 U.S. 386, 405–06 (1995)).

Instead, Gonzalez Ortiz petitioned for review from the Board's later order denying her motion for reconsideration. *See* 8 U.S.C. § 1229a(c)(6); 8 C.F.R. § 1003.2(b). We review the denial of this type of motion for an abuse of discretion. *See Fisenko v. Lynch*, 826 F.3d 287, 290 (6th Cir. 2016). That said, Gonzalez Ortiz asserts a legal claim: that the Board misinterpreted *Juan Antonio* when it found that this decision did not affect her case. The proper meaning of a decision like *Juan Antonio* raises a question of law that we review without deference to the Board. *See Ramos-Torres v. Holder*, 637 F.3d 544, 547 (5th Cir. 2011); *cf. Albertson's Inc. v. NLRB*, 301 F.3d 441, 448 (6th Cir. 2002). And the Board abuses its discretion if it commits a legal error by misreading our cases. *See Harmon v. Holder*, 758 F.3d 728, 732 (6th Cir. 2014).

Gonzalez Ortiz's argument nevertheless fails because she (not the Board) misunderstands *Juan Antonio*'s scope. In that case, the Board found that Maria Magdalena Juan Antonio had failed to show that the Guatemalan government was unable or unwilling to protect her from her husband's abuse. 959 F.3d at 793. We held that substantial evidence did not support this finding. *Id.* at 794–95. Although the government had "taken some steps" to control domestic violence, we reasoned, those steps did not justify the Board's conclusion that the government was able to protect Juan Antonio from her husband. *Id.* at 795. According to Gonzalez Ortiz, our language in *Juan Antonio* created a categorical legal rule that a government must do more than "take steps" to control domestic violence before the Board may find that the government was able to do so. And she argues that the Board in her case denied relief on the same

(allegedly) insufficient ground that the Guatemalan government had "taken steps" to stop domestic violence. A.R. 148.

Yet *Juan Antonio* did not create the categorical rule that Gonzalez Ortiz finds in it. The decision itself makes clear that it was far more fact-bound. *Juan Antonio* repeatedly recognized that we had to consider "the record *as a whole*" when reviewing the Board's finding that the government was able to control private violence. 959 F.3d at 794 (emphasis added); *see id.* at 795. We thus relied on the totality of the evidence (not on any categorical rule) to hold that substantial evidence did not support the Board's finding. *See id.* at 794–95.

Our other caselaw confirms that Gonzalez Ortiz misreads *Juan Antonio* when she suggests that it barred the Board from relying on the fact that a government has taken "*some steps* to combat domestic violence[.]" Pet. Br. 25. Before *Juan Antonio*, we had already held that "the 'unwilling or unable to control' element" turned on the record as a whole, including general conditions in the country. *K. H.*, 920 F.3d at 475–76 (citation omitted). *Juan Antonio* gave no hint that it meant to depart from this approach. Our subsequent caselaw has reaffirmed it. When recently upholding the Board's finding that a Guatemalan immigrant had failed to establish that her government was unable to protect her from private harm, we pointed out that the government was "taking steps" to provide this protection. *José-Tomás v. Barr*, 822 F. App'x 354, 358–59 (6th Cir. 2020).

Read in this proper fact-specific way, *Juan Antonio* does not help Gonzalez Ortiz. For one thing, the decision relied heavily on evidence showing that the local police had failed to respond effectively to Juan Antonio's requests for protection from her husband and were unable to control him. *See Juan Antonio*, 959 F.3d at 794. Unlike Juan Antonio, Gonzalez Ortiz never reported her boyfriend's abuse to the police—despite encouragement from the staff at the health clinic to do so. She testified that she did not report her boyfriend because she was afraid of the consequences if he were arrested. She feared that he would be released quickly given his connections to gang members or that he would send those gang members to harm her. As the Board noted, however, Gonzalez Ortiz "did not establish that her former partner was a gang member or that he could obtain his release from jail through the gangs." A.R. 4. Gonzalez Ortiz's vague and conclusory assertions about the government's inability to control her boyfriend

stand in stark contrast to the government's repeated and demonstrated inability to control Juan Antonio's husband. *Juan Antonio*, 959 F.3d at 794. For another thing, we found it "central" to Juan Antonio's claim that she was "an indigenous Mayan woman," describing the "broader context of systemic violence, harassment, and subordination of indigenous Mayan women in Guatemala." *Id.* at 784–85, 791; *see id.* at 795. Gonzalez Ortiz does not assert that she is an indigenous Mayan.

Gonzalez Ortiz responds that the Board wrongly imposed a blanket rule requiring asylum applicants to report their private abusers to the authorities to establish that the government is unable or unwilling to protect them. But the Board imposed no such categorical rule. It relied on Gonzalez Ortiz's failure to report her boyfriend's abuse as only one factor and concluded that her reasons for not doing so were unsubstantiated. Our cases allowed the Board to follow this path. We have repeatedly upheld the Board's rejection of a claim that the government was unable or unwilling to control a private party in part because the asylum applicant did not notify the government of the abuse. *See, e.g.*, *Ramirez-Yoc v. Whitaker*, 748 F. App'x 700, 701 (6th Cir. 2019); *Seye v. Barr*, 768 F. App'x 381, 383 (6th Cir. 2019); *Ralios Morente*, 401 F. App'x at 24.

Gonzalez Ortiz also argues that the Board should have granted reconsideration because *Juan Antonio* criticized an Attorney General opinion, *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018), on which the immigration judge relied here. In *A-B-*, the Attorney General favorably cited a Seventh Circuit case that described the unable-or-unwilling-to-control element as requiring proof "that the government condoned the private actions 'or at least demonstrated a complete helplessness to protect the victims.'" *Id.* at 337 (quoting *Galina v. INS*, 213 F.3d 955, 958 (7th Cir. 2000)). *A-B-*'s use of this complete-helplessness language has received significant attention. One circuit court found that *A-B-* was arbitrary and capricious because the language created a more demanding test without adequate explanation. *See Grace v. Barr*, 965 F.3d 883, 898–900 (D.C. Cir. 2020). Others viewed the language as consistent with preexisting caselaw. *See Scarlett v. Barr*, 957 F.3d 316, 333 (2d Cir. 2020); *Gonzales-Veliz v. Barr*, 938 F.3d 219, 233–34 (5th Cir. 2019). For our part, *Juan Antonio* recognized that a district court had found *A-B-*'s complete-helplessness test arbitrary and capricious. 959 F.3d at 795. Yet we have

previously used the test ourselves. *See Kere v. Gonzales*, 252 F. App'x 708, 712–13 (6th Cir. 2007); *Skirko v. Gonzales*, 153 F. App'x 958, 961 (6th Cir. 2005).

At day's end, we do not consider this issue. The Attorney General recently vacated *A-B-*. *Matter of A-B-*, 28 I. & N. Dec. 307, 309 (A.G. 2021). And while the immigration judge cited the complete-helplessness test, the Board did not. Indeed, it did not cite *A-B-* at all. Rather, the Board's final order of removal cited two of our decisions for the generic rule that Gonzalez Ortiz must show that the government was unable or unwilling to protect her. *See Marouf v. Lynch*, 811 F.3d 174, 189 (6th Cir. 2016); *Velasquez-Rodriguez*, 762 F. App'x at 244–45. Its order denying reconsideration also rejected Gonzalez Ortiz's claim even under the test that she now proposes. According to that order, she failed to prove that she could not "reasonably expect the assistance of the government" to protect her from Juan Carlos. A.R. 3–4 (quoting *Juan Antonio*, 959 F.3d at 793). In sum, the Board found that Gonzalez Ortiz failed to prove that Guatemala was unable or unwilling to protect her no matter which specific test might apply in this context. Because the Board's ruling comported with *Juan Antonio*, Gonzalez Ortiz offers no valid grounds to disturb it.

B

Gonzalez Ortiz's three remaining arguments cannot change the outcome. She notes that the statutory definition of "refugee" requires an asylum applicant to prove that the applicant fears persecution on account of a protected trait, including "membership in a particular social group." 8 U.S.C. § 1101(a)(42)(A). She argues that *Juan Antonio* supports her proposed social groups in this case because it expressed skepticism about *A-B-*'s narrower reading of the statutory phrase "particular social group." *See Juan Antonio*, 959 F.3d at 790 n.3. But this social-group issue does not matter. The Board "presumed, without deciding," that Gonzalez Ortiz had identified viable social groups. A.R. 3 n.3. It denied relief because Gonzalez Ortiz must independently prove that the government is unable or unwilling to control private violence *even if* she proves that this violence would arise on account of her membership in a particular social group. *See K. H.*, 920 F.3d at 475. Because the Board denied relief on this distinct ground, we need not address Gonzalez Ortiz's arguments about the meaning of the phrase "particular social group." Although Gonzalez Ortiz criticizes the Board for simply *presuming* (without deciding) the

viability of her social groups, we regularly do the same thing. *See José-Tomás*, 822 F. App'x at 359 n.1; *Mulla v. Holder*, 462 F. App'x 592, 594–95 (6th Cir. 2012). Gonzalez Ortiz fails to explain why the Board needed to issue what would be, in effect, an advisory opinion on this social-group element.

An identical problem dooms Gonzalez Ortiz's next claim. To qualify as "persecution," alleged harm must generally be more severe than, say, verbal threats or economic retribution. *See, e.g.*, *Japarkulova v. Holder*, 615 F.3d 696, 699 (6th Cir. 2010). Gonzalez Ortiz argues that the Board wrongly failed to analyze whether Juan Carlos's abuse (like the abuse in *Juan Antonio*) rose to the required level of harm. Here again, this issue does not matter. Even assuming Juan Carlos's abuse was sufficiently harmful, Gonzalez Ortiz's claim still fails because she did not separately prove that Guatemala was unable or unwilling to control this abuse.

Gonzalez Ortiz's last claim cannot affect the outcome for a related reason. An asylum applicant may qualify as a "refugee" based on past persecution or on a well-founded fear of future persecution. *See K. H.*, 920 F.3d at 475. An applicant who proves past persecution is presumed to have a well-founded fear of future persecution. *Mapouya v. Gonzales*, 487 F.3d 396, 412 (6th Cir. 2007); 8 C.F.R. § 1208.13(b)(1). Gonzalez Ortiz argues that the Board wrongly failed to apply this presumption because she proved past persecution. But this argument depends on our acceptance of her claim that Guatemala was unable or unwilling to protect her. Because the Board did not err in rejecting that claim, it did not err in rejecting this presumption.

\* \* \*

Simply put, *Juan Antonio* did not undermine the Board's rejection of Gonzalez Ortiz's claim that the Guatemalan government was unable or unwilling to control Juan Carlos's abuse. The Board thus did not commit legal error or otherwise abuse its discretion in refusing to reconsider its order declining her request for asylum. We deny the petition for review.