NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0089n.06

No. 23-3733

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Feb 29, 2024

KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| ADA BELL BAQUEDANO-AMADOR; EMERSON OSMANY COLINDRES-BAQUEDANO; ALINSON ANALY COLINDRES-BAQUEDANO, | ) ) ) ) | |
| Petitioners, | ) ) | ON PETITION FOR REVIEW FROM THE UNITED STATES BOARD OF IMMIGRATION APPEALS |
| v. | ) ) | |
| MERRICK B. GARLAND, Attorney General, | ) ) | OPINION |
| Respondent. | ) ) | |

Before: BOGGS, McKEAGUE, and LARSEN, Circuit Judges.

PER CURIAM. Ada Bell Baquedano-Amador and her two minor children, Emerson Osmany Colindres-Baquedano and Alinson Analy Colindres-Baquedano, petition this court for review of an order of the Board of Immigration Appeals (BIA) dismissing their appeal from the denial of their application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). As set forth below, we **DENY** the petition for review.

The petitioners, natives and citizens of Honduras, entered the United States in June 2014. Following their arrest by Border Patrol, the Department of Homeland Security served the petitioners with notices to appear in removal proceedings, charging them with removability as noncitizens present in the United States without being admitted or paroled. *See* 8 U.S.C. § 1182(a)(6)(A)(i). The petitioners, through counsel, admitted the factual allegations set forth in the notices to appear and conceded removability as charged; an immigration judge (IJ) sustained the charges against them.

Baquedano-Amador applied for asylum, withholding of removal, and CAT protection, including her minor children as derivative beneficiaries of her application. At the hearing on her application, Baquedano-Amador sought relief based on her membership in two particular social groups: (1) Honduran women and (2) Honduran women abandoned by their husbands.

Baquedano-Amador based her claims on gang activities in Honduras. Baquedano-Amador testified that her problems with gangs increased in severity when her husband left Honduras for the United States in 2011. According to Baquedano-Amador, gangs targeted her because her husband sent her money from the United States and because she was alone and did not have anyone to protect her. In June 2013, members of the Los Simzon gang robbed Baquedano-Amador, taking her cell phone and bag, and threatened her with a knife. Baquedano-Amador reported the robbery to the police, who, she asserted, "never do anything." (A.R. 130). After the robbery, the gang members located Baquedano-Amador and began to extort money from her on a regular basis. Baquedano-Amador testified that her husband stopped sending her money in January 2014 because he was not working as much and did not "like the fact of sending so much money." (A.R. 135). In May 2014, Baquedano-Amador reported the gang's extortion demands to the police. When asked if the police had investigated her claims of extortion, Baquedano-Amador responded, "They never do." (A.R. 134). Baquedano-Amador testified that she left Honduras in June 2014 because she did not have any more funds to pay the gang members. Baquedano-Amador is still married to her husband, who has been removed from the United States, but they are "not together." (A.R. 125). Baquedano-Amador testified that she is afraid to return to Honduras because the gang members might think that she has money and because she would not have anyone to protect her.

At the conclusion of the removal hearing, the IJ issued an oral decision denying Baquedano-Amador's application for asylum, withholding of removal, and CAT protection and

ordering her and her children's removal to Honduras. The IJ found that Baquedano-Amador was credible despite some discrepancies between her testimony and her corroborating evidence. The IJ went on to determine that Baquedano-Amador's robbery and extortion by gang members did not amount to past persecution and that she had failed to establish an objectively reasonable fear of persecution. The IJ next determined that Baquedano-Amador had failed to show that the Honduran government is unable or unwilling to control gangs. According to the IJ, both of Baquedano-Amador's proposed social groups were not cognizable. The IJ also found that Baquedano-Amador had failed to demonstrate that relocation within Honduras was not a reasonable alternative. Having failed to establish eligibility for asylum, the IJ concluded, Baquedano-Amador had failed to satisfy the more difficult standard of proof for withholding of removal. As for CAT protection, the IJ determined that Baquedano-Amador had failed to show that any harm was or would be at the instigation or with the consent or acquiescence of a public official or other person acting in an official capacity.

The petitioners appealed the IJ's decision to the BIA. Dismissing their appeal, the BIA agreed with the IJ that Baquedano-Amador had failed to establish that the Honduran government is unable or unwilling to control the private actors feared by her. Because that issue was dispositive of Baquedano-Amador's claims for asylum and withholding of removal, the BIA did not reach the IJ's alternative findings. According to the BIA, petitioners had failed to raise a substantive challenge to the IJ's denial of CAT protection and had therefore waived that claim.

This timely petition for review followed. Petitioners raise two arguments: (1) the BIA erred by treating *Ortiz v. Garland*, 6 F.4th 685 (6th Cir. 2021), as creating a categorical rule that an applicant cannot prove the "unable or unwilling" element whenever a government has taken steps to fight private violence, and (2) the totality of the evidence compels the conclusion that the

Honduran government is unable or unwilling to protect Baquedano-Amador despite the government's steps to combat gang violence.

"Where, as here, the BIA issues its own decision rather than summarily affirming the IJ, the BIA decision is reviewed as the final agency decision, but the IJ's decision is also reviewed to the extent that the BIA adopted it." *Harmon v. Holder*, 758 F.3d 728, 732 (6th Cir. 2014). We review the agency's factual findings for substantial evidence, reversing only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). Whether the agency applied the correct legal standard is a question of law that we review de novo. *Marqus v. Barr*, 968 F.3d 583, 589 (6th Cir. 2020).

As an initial matter, the petitioners failed to exhaust before the BIA any challenge to the IJ's denial of CAT protection. *See Santos-Zacaria v. Garland*, 598 U.S. 411, 417-19 (2023) (holding that the exhaustion requirement under 8 U.S.C. § 1252(d)(1) is not a jurisdictional requirement but is still a mandatory claims-processing rule). Moreover, the petitioners have forfeited any challenge to the IJ's denial of CAT protection by failing to address that determination in their brief in support of their petition for review. *See Hih v. Lynch*, 812 F.3d 551, 556 (6th Cir. 2016).

The BIA upheld the IJ's denial of asylum and withholding of removal on the basis that Baquedano-Amador had failed to establish that the Honduran government is unable or unwilling to control the private actors feared by her. Because Baquedano-Amador based her claims for asylum and withholding of removal on non-governmental conduct, she had "the burden to show that the [Honduran] government was unwilling or unable to control her persecutors and protect her." *K.H. v. Barr*, 920 F.3d 470, 475 (6th Cir. 2019); *see Khalili*, 557 F.3d at 436.

In determining whether a government is unable or unwilling to control a private actor—a factual finding reviewed for substantial evidence—the BIA "must consider the totality of the circumstances," including "both specific evidence about the government's response to the crimes inflicted on an immigrant and general evidence about a country's ability to deter those crimes." *Palucho v. Garland*, 49 F.4th 532, 536 (6th Cir. 2022). Baquedano-Amador argues that the BIA failed to consider the totality of the evidence and instead treated our decision in *Ortiz* as creating a categorical rule that an applicant cannot prove the "unable or unwilling" element whenever a government has taken steps to fight private violence. Contrary to Baquedano-Amador's argument, the BIA's decision reflects that it considered the record as a whole, including the evidence about her reports to the police and about the general conditions in Honduras, and did not apply any categorical rule.

As the BIA acknowledged, Baquedano-Amador filed two police reports about unnamed members of the Los Simzon gang: she reported the robbery in June 2013 and the extortion in May 2014. When asked if the police investigated her reports, Baquedano-Amador responded, "They never do anything." (A.R. 130, 134). Baquedano-Amador did not provide any specific evidence that the police did not investigate her reports or that they were unwilling to do so. Baquedano-Amador's failure to follow up with either police report further undermined any claim that the police were unable or unwilling to protect her. *See Reyes Almendarez v. Barr*, 817 F. App'x 35, 41 (6th Cir. 2020).

The BIA then turned to the country-conditions evidence, observing that gang violence was rampant in Honduras but that the government had made efforts to control organized crime. The country-conditions evidence in the record showed that the Honduran government had taken steps

to address gang violence and police corruption. *See Palucho*, 49 F.4th at 537; *Ortiz*, 6 F.4th at 689-90.

The substantial-evidence standard "is not just deferential; it is 'highly' so." *Palucho*, 49 F.4th at 540 (quoting *Garland v. Ming Dai*, 593 U.S. 357, 365 (2021)). The record as a whole, including the evidence specific to Baquedano-Amador as well as the general evidence of conditions in Honduras, does not compel the conclusion that the Honduran government is unable or unwilling to control gangs that she fears.

Accordingly, we **DENY** the petition for review.