NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0300n.06

Case No. 24-3738

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jun 13, 2025
KELLY L. STEPHENS, Clerk

MARY SENAIDA CASTANON BAMACA;
JIMMY JOSUE LOPEZ CASTANON,

    Petitioners,

v.

PAMELA BONDI, Attorney General,

    Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)

ON PETITION FOR REVIEW
FROM THE UNITED STATES
BOARD OF IMMIGRATION
APPEALS

OPINION

Before: COLE, READLER, and RITZ, Circuit Judges.

CHAD A. READLER, Circuit Judge. Mary Senaida Castanon Bamaca petitions on behalf of herself and her son for review of the Board of Immigration Appeal's decision rejecting their applications for asylum and withholding of removal. Seeing no error in the Board's decision, we deny the petition.

I.

Castanon Bamaca and her son, both Guatemalan citizens, entered the United States without valid entry documents. When the Department of Homeland Security instituted removal proceedings against them on this basis, Bamaca applied for asylum, withholding of removal, and relief under the Convention Against Torture, with her son as a derivative beneficiary. She based these claims on her abusive relationship with her former partner in Guatemala, Edwin Lopez, expressing fear of future harm if forced to return to her home country. Castanon Bamaca also

asserted that she would face persecution by Lopez based on her membership in various social groups, all of which centered on Guatemalan women and their social status in the country.

At her hearing, Castanon Bamaca testified in support of her application. She met Lopez in 2013, and the two began dating the following year. In 2015, Castanon Bamaca became pregnant, and she later moved in with Lopez and his parents. Lopez began becoming physically violent towards Castanon Bamaca, especially after drinking. Lopez hit Castanon Bamaca "all the time," A.R. at 106, as well as sometimes kicking her or pulling her hair. Castanon Bamaca told Lopez she would report these incidents to a judge but, in the end, never did, believing the authorities would not help her. Eventually, Castanon Bamaca and her son left Lopez and moved to her parents' home. Later, after consulting with her family, she left Guatemala for the United States.

At the close of the hearing, the immigration judge (or IJ) denied Castanon Bamaca's application. Relevant to both Castanon Bamaca's withholding and asylum claims, the IJ found that she did not demonstrate that the Guatemalan government was unwilling or unable to protect her from her abuser. On this point, the IJ relied on the fact that Castanon Bamaca never reported Lopez's abusive behavior to the police. And although the IJ recognized that Guatemala "may have issues controlling and addressing domestic violence between partners, this fact alone," the IJ added, "does not demonstrate the government is unable or unwilling to assist her." *Id.* at 49.

Bamaca appealed to the Board of Immigration Appeals. Reviewing the IJ's findings, the Board concluded that no clear error occurred and adopted the IJ's conclusion that Castanon Bamaca did not establish that the Guatemalan government cannot or will not protect her.

II.

In general, we review the Board's written decision—and not the IJ's prior one—as the final agency determination. *Guzman-Vazquez v. Barr*, 959 F.3d 253, 259 (6th Cir. 2020). But to the extent the Board merely adopted the IJ's reasoning, we also review the IJ's decision. *Id.* In either case, we review legal determinations de novo and factual findings for substantial evidence. *See Hernandez-Hernandez v. Garland*, 15 F.4th 685, 687 (6th Cir. 2021). Under the latter standard the agency's findings of fact are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

Before us, Castanon Bamaca challenges the denial of her respective claims for asylum and withholding of removal. (She did not address the denial of CAT relief in her opening brief and has therefore waived any challenge on that issue. *See Amezola-Garcia v. Lynch*, 846 F.3d 135, 139 n.1 (6th Cir. 2016).) The elements needed to justify an award of asylum or withholding share similar features, and for today's purpose, we can treat the two in tandem. *See Gilaj v. Gonzales*, 408 F.3d 275, 289 (6th Cir. 2005) (per curiam). To be eligible for either asylum or withholding, Castanon Bamaca must show either past persecution in Guatemala or a well-founded fear of future persecution there. *See Owusu v. Garland*, 91 F.4th 460, 463 (6th Cir. 2024). Likewise, for either claim, she must show that the alleged persecution is "sufficiently tied to [that] country's government." *Ortiz v. Garland*, 6 F.4th 685, 688 (6th Cir. 2021); *see also Owusu*, 91 F.4th at 463.

This last point is dispositive. Castanon Bamaca, we note, alleges abuse by a private party—Lopez. To tie Lopez's behavior to the Guatemalan government, as she is required to do, she must show that the government is unable or unwilling to stop Lopez's abuse. *Ortiz*, 6 F.4th at 688. She can do so by showing either that she cannot "reasonably expect the assistance of the government,"

or that Guatemala condoned the acts of private violence or "at least demonstrated a complete helplessness to protect" her. *Palucho v. Garland*, 49 F.4th 532, 536 (6th Cir. 2022) (citation omitted). In considering the issue, we examine both Castanon Bamaca–specific evidence (about the government's response to her situation) and general evidence of the relevant conditions in Guatemala. *K.H. v. Barr*, 920 F.3d 470, 476–77 (6th Cir. 2019).

Beginning with Castanon Bamaca's specific circumstances, we see little basis to conclude that she could not "reasonably expect" the Guatemalan government to assist her in seeking protection from Lopez, *Palucho*, 49 F.4th at 536, let alone a basis to reverse on lack of substantial evidence. As Castanon Bamaca admits, she never reported any of Lopez's misconduct to law enforcement. Accordingly, the government never had an opportunity to respond, making it difficult for Castanon Bamaca to show that the Guatemalan government would have succumbed to a threat of which it was unaware. Indeed, we have "repeatedly" recognized that a failure to seek the government's protection dooms an asylum or withholding claim arising from non-governmental conduct. *Seye v. Barr*, 768 F. App'x 381, 383 (6th Cir. 2019) (citations omitted).

Guatemala's general country conditions point to the same end. The record contains conflicting evidence regarding the state of affairs in the Central American country. Some evidence demonstrates that the Guatemalan government is working to protect women from domestic violence. For example, the country report details that Guatemala has "t[aken] steps to combat . . . violence against women," including by "maintain[ing] a 24-hour court . . . to offer services related to violence directed against women." A.R. at 170. At the same time, "[v]iolence against women, including sexual and domestic violence, remain[s] [a] serious problem[]." *Id.* at 171; *see also id.* at 49 (IJ observing that the government "may have issues" in addressing domestic violence). But, as the IJ noted, none of this evidence demonstrated that the government would not (or could not)

4

help Castanon Bamaca—the ultimate inquiry here. *Id.* at 49. In view of this conflicting evidence on general country conditions, we cannot say that a reasonable adjudicator would be compelled to conclude that Castanon Bamaca cannot expect government assistance against domestic violence. *See Jose-Tomas v. Barr*, 822 F. App'x 354, 359 (6th Cir. 2020).

Seeing things otherwise, Castanon Bamaca argues that the government cannot protect her because, in her view, the authorities would not help her if she asked for assistance. She bases her belief on two personal experiences. First, after the birth of her son, she met a woman who had been raped along with her two-year-old daughter. The woman reported the incident to law enforcement but told Castanon Bamaca "the police didn't do anything with it." A.R. at 123. Second, Castanon Bamaca was aware that Lopez's mother had complained to a judge that her husband "had other lovers," but the judge declined to intervene because the "problem," in his view, was not "that serious." *Id.* at 124. From these encounters, Castanon Bamaca formed the subjective belief that reporting domestic violence would be useless. But, again, because she "fail[ed] to report [her] mistreatment," she lacks "sufficient [evidence] to show that the mistreatment was attributable to the government, whether through action or inaction," even if she has a "subjective belief that authorities are corrupt." *Morales-Morales v. Sessions*, 857 F.3d 130, 135 (1st Cir. 2017). Accordingly, the record does not compel the conclusion that the Guatemalan government is unable or unwilling protect Castanon Bamaca. *See Seye*, 768 F. App'x at 383.

Nor is Castanon Bamaca correct that the IJ's decision "relied entirely" on a revoked precedent. Pet'r Br. 7; *see A-B-*, 27 I. & N. Dec. 316, 316 (A.G. 2018), *vacated* 28 I. & N. Dec. 307 (A.G. 2021). At most, the IJ cited the precedent for the proposition that "private acts of violence unrelated to a protected ground do not constitute persecution." A.R. at 46 (citing *A-B-*,

27 I. & N. Dec. at 322).  This correct statement of law is well established.  *See, e.g.*, *Tista-Ruiz de Ajualip v. Garland*, 114 F.4th 487, 495 (6th Cir. 2024).

*     *     *     *     *

For these reasons, we deny the petition for review.