NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0194n.06

No. 15-3407

UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JOSE JORGE TELLO-RIVERA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| LORETTA E. LYNCH, U.S. Attorney General, | ) | |
| | ) | OPINION |
| Respondent. | ) | |

BEFORE:    DAUGHTREY, CLAY, and STRANCH, Circuit Judges.

**STRANCH, Circuit Judge.**  Jose Jorge Tello-Rivera, a native and citizen of Mexico, petitions for review from the United States Board of Immigration Appeals, which affirmed an immigration judge's denial of Tello-Rivera's application for withholding of removal under the Convention Against Torture.  Tello-Rivera argues that the immigration judge and Board failed to consider all of the documentary evidence he provided and incorrectly required corroboration of his testimony, and that the immigration judge gave him inadequate time to prepare his case, violating his due process rights.  We **DENY** Tello-Rivera's petition for review.

## I.    BACKGROUND

Tello-Rivera, born in Mexico, came to the United States with his parents in 2000, at the age of 15.  In February 2010, pursuant to removal proceedings and a voluntary departure order, he returned to his hometown of Ciudad Hidalgo, Michoacán, Mexico, where he lived with his

aunt. He remained in Mexico for one month before illegally reentering the United States, after which he was served with a notice to appear that charged him with inadmissibility.

At a February 6, 2013 hearing before an immigration judge, Tello-Rivera conceded his inadmissibility but applied for withholding of removal under the Convention Against Torture. The judge ultimately set a hearing on the Convention claim for March 25, over the objection of Tello-Rivera's counsel that six weeks was insufficient time to collect evidence.

At the March 25 hearing, Tello-Rivera testified in support of his application for protection under the Convention that, as a person recently returned from the United States to Mexico, he would be perceived as wealthy and at risk for extortion. According to Tello-Rivera, during his month in Mexico in 2010, he feared leaving his aunt's house after a cousin with ties to gang members warned that they would target him. He testified that an uncle and cousin, as local business owners, were required to pay protection money to the gangs, that neighbors who were unable to pay were killed, and that "[e]verybody knows" the government is complicit in the gangs' activities. His uncle and cousin submitted letters corroborating their extortion. On cross-examination, Tello-Rivera recalled that a female cousin had been kidnapped and, when her mother could not pay the ransom money, "she was cut up." Tello-Rivera asserted that gangs operated throughout the country and that he had no place to live or work in Mexico except Ciudad Hidalgo. As documentary evidence supporting his claims, Tello-Rivera introduced a State Department travel warning, an Amnesty International report describing an increase in human rights abuses in Mexico, and a news article reporting the torture and death of a man in Ciudad Hidalgo.

The immigration judge, after noting consideration of all of the testimony and relevant documentary evidence in the record, concluded that Tello-Rivera was not entitled to protection

under the Convention. The judge found Tello-Rivera generally credible but also that "[m]uch of [Tello-Rivera's] testimony consisted of conclusions, assumptions, and rumors" uncorroborated by other evidence, making it "not particularly probative." (A.R. at 59, 61.) The Board concurred and dismissed Tello-Rivera's claim of insufficient time because he "had sufficient opportunity to prepare" and had not shown prejudice or an effect on the outcome of the proceedings. (*Id.* at 4.)

## II. ANALYSIS

To establish entitlement to relief under the Convention, an applicant must prove "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Singh v. Ashcroft*, 398 F.3d 396, 404 (6th Cir. 2005) (quoting 8 C.F.R. § 208.16(c)(2)). "Torture" is defined as

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

*Id.* at 404–05 (quoting 8 C.F.R. § 208.18(a)(1)).

Tello-Rivera posits two challenges that relate to the immigration judge's and Board's factual finding that it was not more likely than not that he would be tortured if removed to Mexico. We review administrative findings of fact for "reasonable, substantial, and probative evidence on the record considered as a whole," reversing only if "any reasonable adjudicator would be compelled to conclude to the contrary." *Yu v. Ashcroft*, 364 F.3d 700, 702–03 (6th Cir. 2004). Although we generally review the Board's separate opinion as a final agency determination, to the extent that the Board adopts the immigration judge's reasoning,

supplemented with its own comments, we look at both opinions. *Sanchez-Robles v. Lynch*, 808 F.3d 688, 692 (6th Cir. 2015) (citing *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009)).

Tello-Rivera first faults the immigration judge and Board for not specifically mentioning documentary evidence that he submitted on country conditions, particularly human rights violations within Mexico. An adjudicator, "[i]n assessing whether it is more likely than not that an applicant would be tortured in the proposed country of removal," must consider "all evidence relevant to the possibility of future torture," including, but not limited to:

> (1) evidence of past torture inflicted upon the applicant; (2) evidence that the applicant can relocate to a part of the country of removal where he is not likely to be tortured; (3) evidence of gross, flagrant, or mass violations of human rights within the country of removal; and (4) other relevant information regarding conditions in the country of removal.

8 C.F.R. § 1208.16(c)(3). Tello-Rivera cites no authority, however, requiring separate comments on every piece of evidence relating to these considerations; the cited cases instead turn on whether the record shows that an adjudicator adequately made the considerations at all. *See, e.g.*, *Mapouya v. Gonzales*, 487 F.3d 396, 414–15 (6th Cir. 2007) (faulting immigration judge for not considering alien's Convention claim "through the lens" of the § 1208.16(c)(3) considerations); *Mostafa v. Ashcroft*, 395 F.3d 622, 625–26 (6th Cir. 2005) ("[W]e must conclude that the Board failed to analyze [petitioner's] Convention Against Torture claim in light of relevant country conditions and applicable legal precedent."); *see also Almaghzar v. Gonzales*, 457 F.3d 915, 922 (9th Cir. 2006) ("[Section 1208.16(c)(3)] does not require an [immigration judge]'s decision to *discuss* every piece of evidence; it requires only that the [judge] *consider* all evidence." (emphasis added)).

Here, the immigration judge assured that all of the documentary evidence "relevant to the possibility of future torture" was "admitted and considered" before reciting each of the

§ 208.16(c)(3) considerations. (A.R. at 54, 60.) The judge analyzed the possibility of future torture, finding no evidence of past torture and that the State Department travel warning "shows that there are twelve Mexican states where there are no travel warnings." (*Id.* at 60–61.) Regarding evidence of human rights violations, the judge concluded that, although "[v]iolent crime and crime in general are problematic in Mexico" and "there are undoubtedly corrupt police officers and corrupt government officials in Mexico (as there are in the United States and in every other country on Earth)," "[t]he evidence does not prove that it is more likely than not that any single person, [Tello-Rivera] included, would be subjected to torture in Mexico" or "that the government of Mexico or an official of that government would acquiesce in the torture of anyone in Mexico." (*Id.* at 61.) The Board concurred with and repeated the reasoning of the immigration judge. On this record, we cannot conclude that the immigration judge and Board failed to consider any evidence relevant to the possibility of future torture.

Tello-Rivera next claims that the immigration judge and Board erred by not adhering to 8 C.F.R. § 1208.16(c)(2), which governs Convention claims and states that "[t]he testimony of an applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." But § 1208.16(c)(2)'s guidance that credible testimony may be sufficient in a particular case does not compel an adjudicator to find it sufficient in every case. For these reasons and on review of the whole record, we determine that the immigration judge's and Board's conclusion that Tello-Rivera did not sustain his burden of proof is supported by substantial evidence.

We review de novo Tello-Rivera's argument that the immigration judge violated his due process rights by denying him adequate time to gather corroborating evidence. *See Denko v. INS*, 351 F.3d 717, 726 (6th Cir. 2003). To prevail on a due process claim, a petitioner must

show both "error and substantial prejudice," such that "the alleged violation affected the outcome of the proceedings." *Gishta v. Gonzales*, 404 F.3d 972, 979 (6th Cir. 2005).

Tello-Rivera cites no authority supporting his position that six weeks is an inherently insufficient time to prepare for a deportation hearing; instead, he raises for the first time non-controlling Executive Office of Immigration Review policies suggesting that immigration judges should give applicants the time necessary to supplement Convention applications. As to whether Tello-Rivera needed more time, we note that, at the March 25 hearing, he neither contended that he was unable to obtain relevant evidence nor requested a continuance to do so. On the contrary, he was able to solicit and submit a variety of documentary evidence, including letters from his uncle and cousin. And, despite conclusory claims of prejudice on appeal, Tello-Rivera fails to describe or provide any evidence that he might have procured with more time. Any assertion that, with additional time, Tello-Rivera would have and could have corroborated the murder of his cousin, of which he learned one month before the March 25 hearing, is belied by his decision to omit entirely this fact on direct examination. In any event, he has not shown that corroboration of his cousin's murder would have made it more likely than not that he would be subjected to torture with the consent of Mexican officials. We conclude that Tello-Rivera has not shown that the immigration judge erred in setting the hearing, or that the alleged violation resulted in substantial prejudice or affected the outcome of the proceedings.

## III.    CONCLUSION

We **DENY** Tello-Rivera's petition for review of his Convention claim.