NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0518n.06

No. 22-3134

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Dec 14, 2022
DEBORAH S. HUNT, Clerk

GRICELDA FLORIDALMA MORALES-MORALES, HALSSIN KENNEDY LOPEZ-MORALES,

    Petitioners,

v.

MERRICK B. GARLAND, Attorney General,

    Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)

ON PETITION FOR REVIEW
OF AN ORDER OF THE
BOARD OF IMMIGRATION
APPEALS

OPINION

Before: MOORE, STRANCH, and MURPHY, Circuit Judges.

MOORE, J., delivered the opinion of the court in which STRANCH, J., joined. MURPHY, J. (pp. 13–18), delivered a separate opinion concurring in part and dissenting in part.

KAREN NELSON MOORE, Circuit Judge. Gricelda Floridalma Morales-Morales petitions this court for review of an order of the Board of Immigration Appeals ("BIA") dismissing her appeal of the denial of her application for asylum.[1] The BIA dismissed Morales-Morales's appeal based on its finding that she was not eligible for asylum because she had not established either past persecution on account of her race or particular social groups or a well-founded fear of future persecution. Because the BIA failed to consider aspects of Morales-Morales's claim and

_____

[1] Initially, Morales-Morales applied for asylum, withholding of removal, and protection under the Convention Against Torture. On appeal, however, Morales-Morales challenges only the BIA's dismissal of her appeal of the denial of her asylum application.

relevant record evidence, we **GRANT** the petition for review, **VACATE** the BIA's order, and **REMAND** this case to the BIA for proceedings consistent with this opinion.

## I. BACKGROUND

Morales-Morales was born a member of the indigenous Mayan community in Guatemala. Administrative Record ("A.R.") at 436, 441 (I-589 at 1, 6). In June 2015, Morales-Morales left Guatemala with her son and traveled to the United States. *Id.* at 439 (I-589 at 4). The two were detained by immigration authorities in Hidalgo, Texas the following month and placed in removal proceedings. *Id.* at 561 (Notice to Appear at 1). *See* 8 U.S.C. § 1182(a)(6)(A)(i). Morales-Morales conceded before the immigration judge ("IJ") that she had entered the country unlawfully, but moved for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") on the basis that she had been persecuted because of her race and her membership in several particular social groups.[2] A.R. at 124 (09/01/2015 Hr'g Tr. at 3); *id.* at 440 (I-589 at 5).

The IJ held a hearing in March 2019 to address Morales-Morales's application for relief from removal. *Id.* at 161 (03/12/2019 Hr'g Tr. at 35). At the hearing, Morales-Morales claimed that she had been persecuted in Guatemala because of her indigenous race and her membership in four particular social groups: (1) indigenous Guatemalan women living in Guatemala's western highlands; (2) indigenous Guatemalan women who cannot leave a relationship; (3) unmarried indigenous Guatemalan women with children not living with the father of their children; and (4) indigenous Guatemalan women. *Id.* at 492 (Pet'r Pre-Hearing Brief at 3); *id.* at 167–68 (03/12/2019 Hr'g Tr. at 41–42). The IJ received Morales-Morales's pre-hearing brief and exhibits without

---

[2]Morales-Morales listed her son as a derivative applicant on her application. A.R. at 437 (I-589 at 2). He did not file a separate application for relief.

objection from the government and heard testimony from Morales-Morales and arguments by counsel for both sides. *Id.* at 160–209 (03/12/2019 Hr'g Tr. at 34–83).

The primary factual basis for Morales-Morales's application was a past romantic relationship that had turned violent. Morales-Morales testified that she met Noe Lopez-Reynoso when she was sixteen.[3] *Id.* at 184 (03/12/2019 Hr'g Tr. at 58). Lopez-Reynoso was twenty-three and a member of the same indigenous community. *Id.* at 184–85 (03/12/2019 Hr'g Tr. at 58–59). Morales-Morales and Lopez-Reynoso began a romantic relationship six months later. *Id.* at 185 (03/12/2019 Hr'g Tr. at 59). The relationship began on good terms, but Lopez-Reynoso soon began forcing Morales-Morales to have sex with him. *Id.* Lopez-Reynoso told her that she was "his woman," "grabbed [her]," and "made [her]" have sex with him against her will. *Id.* at 186–87 (03/12/2019 Hr'g Tr. at 60–61). Morales-Morales did not report Lopez-Reynoso to the police because "the authorities do not listen to women" like her. *Id.* at 189 (03/12/2019 Hr'g Tr. at 63).

Later, Morales-Morales became pregnant and told Lopez-Reynoso the news. *Id.* at 187 (03/12/2019 Hr'g Tr. at 61). Lopez-Reynoso reacted negatively, telling Morales-Morales that "[h]e's not my son. I do not want to be the father. Do not be telling me that." *Id.* at 188 (03/12/2019 Hr'g Tr. at 62). On the day Morales-Morales's son was born, however, Lopez-Reynoso indicated that he would take her child away from her. *Id.* at 189–90 (03/12/2019 Hr'g Tr. at 63–64). But Lopez-Reynoso did not follow through on his threat, and Lopez-Reynoso has expressed no further interest in taking Morales-Morales's son. *Id.* at 191 (03/12/2019 Hr'g Tr at 65). Following these events, Morales-Morales was confronted by Lopez-Reynoso's partner, who called Morales-

---

[3]Lopez-Reynoso's full name is not spelled consistently in the record. We adopt the spelling Morales-Morales used in her declaration in support of her application for asylum and withholding of removal. A.R. at 449–51 (Pet'r Decl. at 1–3).

Morales a prostitute for having a relationship with Lopez-Reynoso. *Id.* at 191–94 (03/12/2019 Hr'g Tr at 65–68). Morales-Morales has had no contact with Lopez-Reynoso or his partner since that time, but she testified that she is afraid that the two will take her child away and that the Guatemalan police will not stop them. *Id.* at 194–96 (03/12/2019 Hr'g Tr. at 68–70).

Morales-Morales supplemented her testimony with several supporting documents. *Id.* at 319 (Notice of Filing of Additional Evidence at 2). Among these documents were sworn statements from her brother and sister-in-law, who corroborated that Morales-Morales had been mistreated by Lopez-Reynoso and Lopez-Reynoso's partner in Guatemala. *Id.* at 331 (Affidavit of Edgar Morales at 1); *id.* at 334 (Affidavit of Angelica Adelina Ramos Perez at 1). Morales-Morales also submitted declarations from three experts who attested to the abuse women in general and indigenous women in particular experience in Guatemala. *Id.* at 341–55 (Declaration of Nancy K. D. Lemon at 1–15); *id.* at 356–68 (Declaration of Linda B. Green at 1–13); *id.* at 383–97 (Declaration of Elisa Portillo Najera at 1–15). One such declaration, for instance, explained that "indigenous women suffer high levels of violence even at the hands of their intimate partners" due in part to the fact that "the Mayan woman is . . . regarded as holding an inferior and defenseless position." *Id.* at 365 (Declaration of Linda B. Green at 10). Lastly, Morales-Morales submitted a Department of State 2016 Guatemala Country Report that discussed the country's efforts to combat its high incidence of rape and domestic violence against women. *Id.* at 415–16 (Country Report at 14–15).

After hearing Morales-Morales's testimony, the IJ issued an oral decision denying her asylum, withholding of removal, and protection under the CAT. *Id.* at 206–07 (03/12/2019 Hr'g Tr. at 80–81); *id.* at 87–96 (IJ Order at 1–10). The IJ found that Morales-Morales's testimony was credible, *id.* at 90 (IJ Order at 4), and that she had endured "acts of discrimination and domestic

violence," *id.* at 207 (03/12/2019 Hr'g Tr. at 81). But the IJ ultimately found that the events described in Morales-Morales's testimony did "not fit within the requirements for asylum or withholding as far as being considered persecution." *Id.* at 207 (03/12/2019 Hr'g Tr. at 81). The IJ further found that Morales-Morales "was not treated poorly because of her membership in a proposed social group but was mistreated because of a bad relationship and poor economic circumstances as a result of being unemployed." *Id.* at 92 (IJ Order at 6). Based on these findings, the IJ ordered Morales-Morales and her son removed to Guatemala. *Id.* at 95 (IJ Order at 9).

Morales-Morales appealed the IJ's denial of her asylum application to the BIA, which dismissed her appeal.[4] *Id.* at 3–6 (BIA Order at 1–4). The BIA assumed that the particular social groups proposed by Morales-Morales were cognizable, but found that she had "not established that she was or will be harmed in Guatemala on account of her race or her membership in any of the proposed particular social groups." *Id.* at 4 (BIA Order at 2).[5] The BIA elaborated that "there is no indication from the record evidence that the respondent's ex-partner harmed the respondent

---

[4]The BIA found that Morales-Morales had "not meaningfully challenged the [IJ's] denial of her applications for withholding of removal or CAT protection." A.R. at 3 (BIA Order at 1 n.2). Morales-Morales does not challenge the BIA's finding in her petition.

[5]The separate opinion suggests that the BIA may not have found that Morales-Morales failed to establish the causation element of her claim and may instead have found that she had not shown that the Guatemalan government was unable or unwilling to control Lopez-Reynoso. Although we agree that the BIA's decision is not a model of clarity, we do not share the separate opinion's view of the basis for the BIA's decision. The BIA repeatedly stated that Morales-Morales had failed to demonstrate that she suffered past persecution on account of her membership in a particular social group or her race. *See* A.R. at 4 (BIA Order at 2) ("[W]e agree with the [IJ] that [Morales-Morales] has not established that she was or will be harmed in Guatemala on account of her race or her membership in any of the proposed particular social groups[.]"); *id.* at 5 (BIA Order at 3) (finding that Morales-Morales "has not established that she was harmed in Guatemala because of her race or membership in her proposed particular social groups"); *id.* (concluding that Morales-Morales "has not established that her race or membership in the proposed particular social groups is one central reason for the harm she experienced in Guatemala."). By contrast, the BIA made only fleeting references to "private actors" and "private violence" and did so in the context of its observation that "[a]cts of personal or private violence are generally insufficient to establish eligibility for asylum *because such acts do not satisfy the required nexus between the claimed or feared harm and a statutorily protected ground*." *Id.* at 4 (BIA Order at 2) (emphasis added). We thus take the BIA at its word and address its causation finding. In any event, the BIA will be free to consider the state-action aspect of Morales-Morales's claim on remand.

5

because she could not leave the relationship or because she was unmarried with a child not living with the father." *Id.* at 4–5 (BIA Order at 2–3). Given this conclusion that Morales-Morales had "not established past persecution," the BIA found that Morales-Morales was not entitled to a presumption of a well-founded fear of future persecution and that she had not established an objectively reasonable fear of future persecution on account of her race or membership in a protected social group. *Id.* at 5 (BIA Order at 3). The BIA declined to address all remaining issues, such as whether the IJ erred in finding that Lopez-Reynoso's actions did not rise to the level of persecution, raised by Morales-Morales's appeal. *Id.* at 6 (BIA Order at 4).

Morales-Morales raises three arguments in her petition for review. First, she argues for the first time that the notice to appear that she received upon her initial detention in 2015 was defective and warrants remand to the IJ. Second, she challenges the BIA's finding that she is ineligible for asylum because she was not persecuted because of her race or particular social group. Third, she contests the BIA's finding that she is independently ineligible for asylum because she has not established a well-founded fear of future persecution. We will address each argument in turn.

## II. ANALYSIS

### A. Standard of Review

"When the BIA does 'not summarily affirm or adopt the IJ's reasoning and provide[s] an explanation for its decision, we review the BIA's decision as the final agency determination.'" *Fang Huang v. Mukasey*, 523 F.3d 640, 651 (6th Cir. 2008) (quoting *Ilic-Lee v. Mukasey,* 507 F.3d 1044, 1047 (6th Cir. 2007)). "To the extent the BIA adopted the immigration judge's reasoning, however, this Court also reviews the immigration judge's decision." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). We review legal findings de novo and factual findings under a substantial-

evidence standard. *Zometa-Orellana v. Garland*, 19 F.4th 970, 976 (6th Cir. 2021). We will uphold the agency's factual determination where "it is 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Koulibaly v. Mukasey*, 541 F.3d 613, 619 (6th Cir. 2008) (quoting *Marku v. Ashcroft,* 380 F.3d 982, 986 (6th Cir. 2004)). Conversely, we will reverse its factual finding only where "the evidence not only supports a contrary conclusion, but indeed *compels* it." *Dorosh v. Ashcroft*, 398 F.3d 379, 381 (6th Cir. 2004) (quoting *Klawitter v. INS*, 970 F.2d 149, 152 (6th Cir. 1992)) (emphasis in original).

## B. Notice to Appear

Preliminarily, Morales-Morales moves to have her case remanded to the IJ for further proceedings addressing her claim that the initial notice to appear that she received in 2015 was deficient because it did not list the date or time of her removal hearing as required by 8 U.S.C. § 1229(a)(1)(G)(i) and 8 C.F.R. § 1003.14(a). *See* A.R. at 561 (Notice to Appear at 1). We decline to remand the case on this basis because Morales-Morales forfeited her claim. Although Morales-Morales concedes that this is the first time that she has raised the claim, she contends that she could not have done so earlier because the claim was foreclosed by binding precedent issued between 2018 and 2019 and that the claim became viable only after the Supreme Court issued its decision in *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021). Even if we were to agree with Morales-Morales on this point, she has not identified any reason for her failure to raise her claim when she first received the notice to appear in 2015 or at any point during the following three years. We therefore hold that Morales-Morales forfeited the claim. *See Zuniga-Martinez v. Garland*, No. 21-3312, 2022 WL 2160668, at *3 (6th Cir. June 15, 2022) (declining to address similar argument on timeliness grounds); *Ortiz-Santiago v. Barr*, 924 F.3d 956, 964–65 (7th Cir. 2019) (same).

7

## C. Eligibility for Asylum

Turning to the heart of her petition, Morales-Morales challenges the BIA's finding that she is not eligible for asylum. The Attorney General has discretion under the Immigration and Nationality Act ("INA") to grant asylum to a "refugee." 8 U.S.C. § 1158(b). "The disposition of an application for asylum involves a two-step inquiry: (1) whether the applicant qualifies as a 'refugee' as defined in 8 U.S.C. § 1101(a)(42)(A), and (2) whether the applicant 'merits a favorable exercise of discretion by the Attorney General.'" *Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005) (per curiam) (quoting *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994)).

To qualify as a refugee under the INA, the asylum applicant must be "unable or unwilling" to return to her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(A). "Thus, there are two alternative methods by which an applicant for asylum may establish eligibility for asylum: (1) the applicant can prove that he or she has suffered past persecution, or (2) the applicant can show that he or she has a well-founded fear of future persecution." *Gilaj*, 408 F.3d at 283 (citing 8 C.F.R. § 208.13(b)).

Although a well-founded fear of future persecution is sufficient but not necessary to qualify for asylum, the "likelihood of present or future persecution" is "relevant as to the [BIA's] exercise of discretion." *Alakhfash v. Holder*, 606 F. App'x 291, 297 (6th Cir. 2015) (quoting *Gilaj*, 408 F.3d at 288); *see also* 8 C.F.R. § 208.13(b)(1)(i)–(ii) (dictating the circumstances under which an IJ may exercise his or her discretion to grant asylum to an applicant "found to be a refugee [solely] on the basis of past persecution"). To that end, "[a]n applicant who establishes that she has suffered past persecution is presumed to have a well-founded fear of future persecution." *Juan Antonio v. Barr*,

959 F.3d 778, 789 (6th Cir. 2020) (quoting *Bi Xia Qu v. Holder*, 618 F.3d 602, 606 (6th Cir. 2010)). "The government can rebut this presumption, however, by showing that conditions in the country 'have changed so fundamentally that the applicant no longer has a well-founded fear of future persecution.'" *Id.* (quoting *Bi Xia Qu*, 618 F.3d at 606).

### 1. Past Persecution

Morales-Morales first argues that the BIA erred in finding that she had not established past persecution because she failed to establish a nexus between her purported persecution and either her race or her membership in a particular social group comprising indigenous Guatemalan women.[6] "In order to demonstrate that an applicant has been persecuted on account of . . . membership in a particular social group, it is not enough to present evidence that the applicant . . . *was* a member of that social group." *Marku*, 380 F.3d at 986 (citing 8 U.S.C. § 1101(a)(42)(A)) (emphasis in original). Rather, the evidence must show that the "applicant was persecuted *on account of* or *because of*" her particular social group. *Id.* (emphasis in original). Put differently, the applicant's "membership in a particular social group" must be "at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i).

Here, the BIA's finding that Morales-Morales had not demonstrated that she was persecuted "on account of" her status as an indigenous Guatemalan woman is not supported by substantial evidence because the BIA failed to address one of Morales-Morales's particular social groups and relevant record evidence. The BIA found that the evidence did not demonstrate that Lopez-Reynoso targeted Morales-Morales "because she could not leave the relationship or because she was

---

[6]Morales-Morales does not dispute the BIA's findings with respect to the three other social groups identified in her asylum application.

unmarried with a child not living with the father." A.R. at 4–5 (BIA Order at 2–3). But the BIA did not address whether Morales-Morales's testimony, considered alongside her expert declarations and country conditions report, established that she was persecuted because of her status as an indigenous Guatemalan woman. In fact, there is nothing in the BIA's decision that indicates that the BIA considered that proposed particular social group or the declarations or report at all. To be sure, "[w]e do not require the Board's opinion to mention every piece of evidence before it or every logical element of a motion." *Zhang v. Mukasey*, 543 F.3d 851, 854 (6th Cir. 2008). Here, however, the BIA did not merely fail to cite or reference a piece of evidence. Rather, the BIA erred by failing to consider Morales-Morales's proposed particular social group of indigenous Guatemalan women and the related evidence before dismissing her appeal. *See Mandebvu v. Holder*, 755 F.3d 417, 431 (6th Cir. 2014) (holding that the IJ's decision was not based on substantial evidence where it "failed to consider several critical pieces of evidence"); *Mostafa v. Ashcroft*, 395 F.3d 622, 625–26 (6th Cir. 2005) (vacating a BIA decision where the BIA failed to consider relevant record evidence); *Juan-Pedro v. Sessions*, 740 F. App'x 467, 470–72 (6th Cir. 2018) (vacating the BIA's decision in light of its "myopic view of the record" that led it to overlook the petitioner's declaration, expert materials, news articles, and country condition reports); *see also Juan-Pedro*, 740 F. App'x at 474 (Thapar, J., concurring) (agreeing that the BIA's failure to consider relevant evidence "is a flaw we may not overlook").

Taken as a whole, the record establishes that Morales-Morales's particular social group was at least one central reason for her persecution. Morales-Morales testified that Lopez-Reynoso raped her when he was twenty-three and she was sixteen, and that he insisted she have sex with him because he believed she "was already his woman." A.R. at 186 (03/12/2019 Hr'g Tr. at 60). She

further testified that she did not report Lopez-Reynoso to the Guatemalan police because, in her words, "the authorities do not listen to women like" her. *Id.* at 189 (03/12/2019 Hr'g Tr. at 63). Although the BIA's decision began and ended with Morales-Morales's testimony, the record does not stop there. According to Morales-Morales's expert reports, "men who abuse their wives or female partners are primarily motivated to do so by a gender bias against women." *Id.* at 355 (Declaration of Nancy K.D. Lemon at 15). Further, the reports find that the kind of gender-based violence that Morales-Morales experienced is prevalent in Guatemala, and that indigenous Mayan women are at particular risk of being subjected to such violence without legal recourse. *Id.* at 386–87 (Declaration of Elisa Portillo Najera at 4–5); *id.* at 363–66 (Declaration of Linda B. Green at 8–11). All of this evidence—which Morales-Morales submitted, the government has not challenged, and the BIA failed to consider—provides critical context to Morales-Morales's account of Lopez-Reynoso's actions and compels the conclusion that Lopez-Reynoso targeted her for sexual violence at least in part because she is an indigenous woman.[7] Accordingly, the BIA erred in finding that Morales-Morales had not demonstrated a nexus between her persecution and her particular social group. *See Zuniga-Martinez*, 2022 WL 2160668, at *4–5 (vacating the BIA's nexus finding for similar reasons); *Juan-Pedro*, 740 F. App'x at 470–72 (same).[8]

---

[7]Ordinarily, "[a] factual finding by the IJ, affirmed by the BIA, that is based on testimony that cuts in both directions," may not be "a finding that we can disturb under the substantial-evidence standard." *Pereira v. Barr*, 777 F. App'x 797, 801 (6th Cir. 2019). But Morales-Morales has not asked us to second-guess the BIA's factual findings, and our resolution of her petition does not require us to do so. Indeed, as the separate opinion also notes, the BIA failed to address Morales-Morales's documentary evidence or make factual findings bearing on her claim that she suffered past persecution because she is an indigenous Guatemalan woman.

[8]Morales-Morales has not put forward similar evidence that would compel the conclusion that she was persecuted on account of her race. We therefore decline to vacate the BIA's decision on that basis.

11

### 2. Future Persecution

Morales-Morales also argues that the BIA erred in finding that she was ineligible for asylum because she had not established a well-founded fear of future persecution. As noted earlier, an asylum applicant who establishes that she suffered past persecution is entitled to a presumption of a well-founded fear of future persecution. *Juan Antonio*, 959 F.3d at 789. Here, the BIA found that Morales-Morales was not entitled to a presumption of a well-founded fear of future persecution because she had not established past persecution. A.R. at 5 (BIA Order at 3). The BIA therefore did not shift the burden to the government to rebut that presumption, but instead found that Morales-Morales had not shown that any future persecution would be on account of her race or particular social group or that she had an "objectively reasonable fear of future persecution[.]" *Id.* Because the BIA may ultimately find that Morales-Morales has established past persecution and thus is entitled to a presumption of a well-founded fear of future persecution, and has not had an opportunity to consider whether the government can rebut that presumption, we will remand the matter and leave it to the BIA to address these issues in the first instance. *See Gilaj*, 408 F.3d at 288–89; *Zuniga-Martinez*, 2022 WL 2160668, at *6.

## III. CONCLUSION

For these reasons, we **GRANT** the petition, **VACATE** the BIA's order, and **REMAND** the case to the BIA for proceedings consistent with this opinion.

MURPHY, Circuit Judge, concurring in part and dissenting in part. Gricelda Floridalma Morales-Morales, an indigenous Mayan from Guatemala, raises two challenges to the Board of Immigration Appeals' order to remove her to Guatemala. She argues (1) that the notice to appear initiating her removal proceedings lacked all required information and (2) that substantial evidence does not support the Board's denial of her asylum claim. I agree with my colleagues that we should reject her first argument and that we should remand for the Board to reconsider her second argument. But I would follow a narrower path to the second conclusion.

The immigration laws give the Attorney General the discretion to grant asylum to Morales-Morales if she qualifies as a "refugee." 8 U.S.C. § 1158(b)(1)(A). To fall within the definition of "refugee," Morales-Morales needed initially to establish that she suffered past "persecution" in Guatemala or that she had a "well-founded fear" of future "persecution" in that country. *Id.* § 1101(a)(42)(A). Although this text suggests that past persecution alone suffices for Morales-Morales to qualify as a refugee, the Attorney General has exercised his discretion in a way that generally bars asylum relief unless she also has a well-founded fear of future persecution. *See Mbonga v. Garland*, 18 F.4th 889, 894–95 (6th Cir. 2021). At the same time, the Attorney General treats past persecution as creating a presumption of future persecution. *See id.* Morales-Morales asserted that she suffered past persecution (and thus created a presumption of future persecution) because her former partner, Noe Lopez-Reynoso, repeatedly forced her to have sexual relations over a six-month period. Admin. R. (A.R.) 4, 185–87, 198, 449. Lopez-Reynoso's sexual assaults allegedly ended around the time that Morales-Morales gave birth to their son. A.R. 191, 199–200.

To show that she qualified as a "refugee" based on Lopez-Reynoso's private violence, Morales-Morales needed to prove at least two other things. To begin with, the asylum statute

13

required Lopez-Reynoso's sexual abuse to have been "on account of" a statutorily protected trait—such as Morales-Morales's "membership in a particular social group[.]" 8 U.S.C. § 1101(a)(42)(A). To prove this causation element, Morales-Morales needed to show that her membership in the identified social group was "one central reason" for Lopez-Reynoso's abuse. *Id.* § 1158(b)(1)(B)(i). In addition, courts have read the word "persecution" in the "refugee" definition to require an immigrant like Morales-Morales to prove that her claimed harm has a sufficient connection to her country's government. *See Ortiz v. Garland*, 6 F.4th 685, 688 (6th Cir. 2021). To prove this state-action element, Morales-Morales needed to show that the Guatemalan government was unable or unwilling to control Lopez-Reynoso. *See id.*

Morales-Morales attempted to make these showings by alleging her membership in four different "particular social groups." The Board described her proposed groups as: "(1) indigenous Guatemalan women living in Guatemala's western highlands, (2) indigenous Guatemalan women who cannot leave a relationship, (3) unmarried, indigenous Guatemalan women with children not living with the father of their children, and (4) indigenous Guatemalan women." A.R. 4.

When rejecting Morales-Morales's asylum claim, the Board assumed that these groups were "cognizable" but held that she had not established other elements for "past persecution." *Id.* Why? For the most part, the Board suggested that Morales-Morales's asylum claim failed on causation grounds because she had not shown that Lopez-Reynoso's sexual abuse was "on account of" her membership in her proposed groups. That said, the Board offered specific rationales only for Morales-Morales's second and third proposed groups. It pointed out that Morales-Morales had not spoken with Lopez-Reynoso for the seven years that she remained in Guatemala after the birth of her son and that he had not harmed her during this time. A.R. 4. This evidence offers substantial

14

support for the Board's finding that Lopez-Reynoso did not sexually assault her "on account of" her inability to leave their relationship (she had left it) or her status as a woman with a child who was not living with the child's father (the abuse had ended before her son's birth). A.R. 4–5. Morales-Morales thus does not even raise these proposed "particular social groups" on appeal.

Yet I remain unsure of the Board's rationale for rejecting the proposed particular social group that Morales-Morales does raise on appeal: indigenous Guatemalan women. In my view, the Board's failure to clearly identify its rationale necessitates a remand. We generally review the agency findings underlying the denial of asylum using a deferential substantial-evidence test. *See Rodriguez de Palucho v. Garland*, 49 F.4th 532, 538–39 (6th Cir. 2022); 8 U.S.C. § 1252(b)(4)(B). But we cannot evaluate whether substantial evidence supports such a finding when we cannot even tell what that finding is. *See Rodriguez de Palucho*, 49 F.4th at 539 (citing *T-Mobile S., LLC v. City of Roswell*, 574 U.S. 293, 303 (2015)). To be sure, the Board need not provide "ideal clarity" for its decision to reject an asylum claim as long as we can "reasonably" identify the rejection's basis. *Garland v. Ming Dai*, 141 S. Ct. 1669, 1679 (2021) (citation omitted). But when the Board's opinion leaves us in the dark over its decisional path, we may not uphold its rejection of an asylum claim based on our own "*ex post* rationales" for what the Board might have found. *Id.*; *see also Gonzales v. Thomas*, 547 U.S. 183, 185–87 (2006) (per curiam); *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943).

This logic applies here. Unlike with Morales-Morales's other proposed social groups, the Board nowhere specifically addressed the proposed group of indigenous Guatemalan women. And I find its generic reasoning for rejecting Morales-Morales's asylum claim unclear. The Board explained that Morales-Morales's asylum claim failed as a general matter because her evidence

proved only that she "was a victim of harmful acts by private actors." A.R. 4. It added that "personal or private violence" generally does not suffice for asylum because it does "not satisfy the required nexus between the claimed or feared harm and a statutorily protected ground." *Id.* This reasoning can be read in two different ways. The Board's repeated reference to the "private" nature of the abuse might suggest that it found that Morales-Morales failed to show the required *state-action connection* to the harm. *Id.* Yet it did not identify our usual "unable or unwilling to control" test for determining whether an immigrant like Morales-Morales can link a private party's misconduct to the government. *Ortiz*, 6 F.4th at 688. Alternatively, the Board's reference to a "nexus" might suggest that it found that Morales-Morales failed to show the required *causation*. A.R. 4. Yet it did not explain why the fact that Lopez-Reynoso is not part of the government should affect whether Morales-Morales's status as an indigenous woman was "one central reason" for his sexual abuse. 8 U.S.C. § 1158(b)(1)(B)(i).

In this court, the Attorney General's lawyers assert that the Board relied on causation grounds. Respondent's Br. 15–16. They suggest that the Board could reasonably find that Lopez-Reynoso sexually assaulted Morales-Morales not because "of her indigenous status" but exclusively because of her gender. *Aguilar-Gonzalez v. Barr*, 779 F. App'x 354, 358 (6th Cir. 2019) (per curiam). The government, for example, cites Morales-Morales's testimony that Lopez-Reynoso forced her to have sex because she was allegedly "his woman," not because of her ancestry. A.R. 186. It adds that Morales-Morales did not argue before the Board that "women" qualify as a "particular social group"—perhaps because courts have rejected such broadly framed groups. Respondent's Br. 14 n.7; *see Rodriguez-Lopez v. Garland*, 2021 WL 3140324, at *4 (6th Cir. July 26, 2021); *Chavez-Chilel v. Att'y Gen.*, 20 F.4th 138, 146 (3d Cir. 2021); *Da Silva v. U.S.*

*Att'y Gen.*, 459 F. App'x 838, 841 (11th Cir. 2012). (Indeed, we have already upheld the Board's finding that a proposed particular social group of "indigenous Guatemalan women" was not cognizable—a question that the Board did not consider here and may have to address on remand. *Rodriguez-Lopez*, 2021 WL 3140324, at *4.) But it is not reasonably clear to me that the Board (or the immigration judge) rested on the causation analysis that the Attorney General's lawyers now invoke. *See Ming Dai*, 141 S. Ct. at 1679. The Board's reliance on the "private" nature of the harm could just as well be read to rest upon the state-action element. A.R. 4. I thus would remand solely for the Board to clarify the basis for its decision to reject this proposed social group.

My reasoning departs from my colleagues' approach in two ways. For one thing, they suggest that the Board committed a procedural error because its opinion did not expressly consider the country-conditions evidence that Morales-Morales introduced. Yet if the Board had sufficiently identified the basis of its ruling, I would not remand solely because it did not confront this country-conditions evidence in its opinion. Our caselaw has never required the Board to issue an exhaustive opinion that considers and rejects "every piece of evidence" that a party introduces. *Zhang v. Mukasey*, 543 F.3d 851, 854 (6th Cir. 2008); *see Rodriguez de Palucho*, 49 F.4th at 537–38 (citing cases). The failure to cite evidence matters only if it leaves us unable to pinpoint the basis for the agency's finding. *See Rodriguez de Palucho*, 49 F.4th at 537–40; *see also Tello-Rivera v. Lynch*, 644 F. App'x 697, 700 (6th Cir. 2016). I cannot pinpoint that basis here.

For another thing, my colleagues ultimately treat the Board's failure to discuss all of the evidence as beside the point. They go on to consider that evidence themselves and hold that "any reasonable adjudicator would be compelled to conclude" that Lopez-Reynoso sexually abused Morales-Morales because she was an indigenous woman. 8 U.S.C. § 1252(b)(4)(B). I do not

dispute that the evidence on which they rely—for example, the expert declaration from Dr. Linda Green—might permit a reasonable factfinder to reach this conclusion. A.R. 365. As the Attorney General's lawyers have explained on appeal, however, there is plenty of evidence that would support the conclusion that Morales-Morales's gender alone led to the domestic abuse. As a general matter, her own evidence (such as a state department country-condition report) calls domestic violence against all women a "serious problem[]" in Guatemala. A.R. 228. As a specific matter, Morales-Morales identifies no facts suggesting that Lopez-Reynoso was motivated by her indigenous ancestry as even a partial reason for the abuse. As we said when rejecting reliance on Dr. Green's testimony in another case, an immigrant cannot satisfy the highly deferential substantial-evidence test when the evidence "cuts in both directions[.]" *Pereira v. Barr*, 777 F. App'x 797, 801–02 (6th Cir. 2019); *see also Aguilar-Gonzalez*, 779 F. App'x at 358.

Because I would remand this case to the Board without undertaking the substantial-evidence inquiry, I respectfully concur in part and dissent in part.